Melvin Dewayne JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–00967–CR.

Court of Appeals of Texas, Dallas.

Oct. 5, 1992.

Discretionary Review Refused Feb. 3, 1993.

---

John Tatum, Dallas, for appellant.

Michael J. Sandlin, Dallas, for appellee.

Before THOMAS, CHAPMAN and WIGGINS, JJ.

## OPINION

THOMAS, Justice.

After a jury convicted appellant, Melvin Dewayne Jones, of aggravated robbery, the trial court assessed punishment, enhanced by two prior convictions, at life confinement. In seven points of error, appellant generally complains that (a) the evidence is insufficient to support his conviction and that the trial court erred in (b) overruling his objections to hearsay and opinion testimony, (c) overruling his requested jury instruction on the lesser-included offense of theft, (d) overruling his objection to the prosecutor's improper jury

argument, and (e) admitting certain penitentiary records. We overrule all points of error. Accordingly, we affirm the trial court's judgment.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

 In the first point of error, appellant contends that the evidence is insufficient to support his conviction for aggravated robbery. When reviewing a sufficiency of the evidence point, this Court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Turner v. State,* 805 S.W.2d 423, 427 (Tex. Crim.App.), *cert. denied,* ── U.S. ──, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Questions concerning the credibility of the witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

### B. Factual Background

The complainant, Donna Lynn Stewart, testified that she left work at about 4:30 p.m. and walked to her car, which she had parked in a lot under Woodall Rodgers Freeway. As she got into the driver's seat, she looked across the parking lot and saw a man, later identified as appellant, watching her. She got in her car and was ready to shut the door when she saw a person's feet approach the side of the car. Appellant put his hand over complainant's face and told her not to scream. Appellant's grip was tight enough to split her lip. Complainant testified that appellant threatened her and placed her in fear of imminent bodily injury and death. She was very scared and felt that appellant was going to either rape or murder her. Complainant screamed. Appellant grabbed her purse from the passenger seat and ran up a side street. Complainant ran after appellant, yelling for the police.

Tim Sperier testified that he heard complainant scream, and he ran after appellant. When Sperier knocked appellant down, complainant's purse fell to the ground, spilling its contents. Sperier began picking up the purse's contents. Sperier testified that, as appellant got up, he had a knife in his right hand. Appellant was holding it to his side, up in the air at about chest level, walking toward Sperier. Sperier felt threatened and thought that he was about to be stabbed. Sperier testified that complainant ran at appellant. Then appellant hit complainant and ran away, carrying her wallet. Sperier then asked complainant if she knew that the man had a knife.

Complainant testified that she did not see the knife that appellant allegedly carried, although, before appellant ran away, Sperier told her: "You better be careful. He's got a knife." She stated that, when the purse fell to the ground, she tried to grab her wallet, which contained money. She testified that appellant got up, lunged at her, and knocked her down. She hit a parked car and the pavement and suffered a split lip, a gash under her left arm, muscle spasms in her right arm, a bruised left knee, and a bruised and knotted left thigh and hip.

Sperier testified that he again began to chase appellant. Another man joined the chase, and appellant swung at him with the knife, cutting the man's shirt. Appellant also threw one of his shoes at the man. Appellant eventually fled in a blue car. The car's license plate was traced to appellant.

### C. Sufficient Evidence of Robbery

 Viewing the evidence in the light most favorable to the verdict, appellant came up behind complainant and put his hand over her face so tightly that it split her lip. He told her not to scream. He threatened her and placed her in fear of imminent bodily injury and death. Complainant was very scared and felt that appellant was going to either rape or murder her. When she screamed, appellant

grabbed her purse from the car and ran. Thus, the evidence is sufficient to show that, at that point, appellant had committed a robbery. We now consider whether the robbery became aggravated.

### D. Sufficient Evidence of Use or Exhibition of a Deadly Weapon

The indictment alleged that appellant:

while in the course of committing theft of property and with intent to obtain and maintain control of said property of DONNA LYNN complainant, hereinafter called complainant, the said property being one (1) purse and current money of the United States of America without the effective consent of the said complainant and with intent to deprive the said complainant of said property, did then and there knowingly and intentionally threaten and place the said DONNA LYNN complainant in fear of imminent bodily injury and death, *and the defendant did then and there use and exhibit a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury.*

(Emphasis added.)

The jury instruction on aggravated robbery stated in relevant part:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, MELVIN DEWAYNE JONES ... did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of the property of DONNA LYNN complainant, the said property being one (1) purse or current money of the United States of America, without the effective consent of the said DONNA LYNN complainant, and with intent to deprive the said DONNA LYNN complainant of said property, did then and there intentionally or knowingly threaten or place the said DONNA LYNN complainant in fear of imminent bodily injury or death, *and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable*

*of causing death or serious bodily injury,* then you will find the defendant guilty of the offense of aggravated robbery, as charged in the indictment and so say by your verdict.

A person commits aggravated robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, and he uses or exhibits a deadly weapon. TEX.PENAL CODE ANN. §§ 29.02(a)(2) & 29.03(a)(2) (Vernon 1989 & Supp. 1992).

Appellant contends that Sperier's testimony that he saw appellant holding a knife as he fled is insufficient to prove the use of a deadly weapon. We will consider the sufficiency of the evidence of (1) whether the knife was a deadly weapon and, if so, (2) whether appellant used or exhibited the knife in the course of committing theft and with the intent to obtain or maintain control of the property.

### 1. Was the Knife a Deadly Weapon?

A "deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX.PENAL CODE ANN. § 1.07(a)(11)(B) (Vernon 1989). Although a knife is not a deadly weapon per se, it can qualify as such through evidence about its use, intended use, size, shape, sharpness, and capacity to produce death or serious bodily injury. *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983); *Denham v. State,* 574 S.W.2d 129, 131 (Tex.Crim.App.1978). Expert testimony is not required to establish the knife as a deadly weapon. *Denham,* 574 S.W.2d at 131. The presence of wounds is not a prerequisite to a finding of deadliness. *Denham,* 574 S.W.2d at 131; *see also Curry v. State,* 674 S.W.2d 495, 498–500 (Tex. App.—Fort Worth 1984, pet. ref'd) (knife can be deadly weapon in absence of actual use such as wound or being placed next to victim's neck). Rather, it is sufficient if the weapon is capable of causing death or serious bodily injury or is displayed in a manner conveying an express or implied

threat that serious bodily injury or death will result if the aggressor is not satisfied. *Jackson v. State,* 668 S.W.2d 723, 725 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). The manner of use is the most important criterion. *Dominique v. State,* 598 S.W.2d 285, 286 (Tex.Crim.App. [Panel Op.] 1980) (scissors, in the manner of its intended use, was deadly weapon).

■ Viewed in the light most favorable to the verdict, Sperier testified that, when appellant got up from the ground, he had a knife in his right hand. Sperier described the knife as a "lockblade" with a three- to four-inch blade. Appellant held it up in the air at chest level and walked toward Sperier. Sperier felt threatened and backed up, and he thought that he was about to be stabbed. After appellant knocked down complainant, he fled. Sperier and another man chased appellant. The other man caught up to appellant, who swung at the man and cut his shirt. Thus, not only did appellant brandish the knife towards Sperier, he also swung it towards another pursuer and actually slashed his shirt. The trier of fact could have inferred that the knife's ability to cut the shirt indicated its sharpness. Additionally, the trier of fact could have inferred that the knife's use in slashing a pursuer's shirt indicated its intended use and capability of causing death or serious bodily injury. Further, when asked if the knife was a deadly weapon, Sperier replied, "Yes. If—if it hit a vital organ or—I'd say yes, it could have been." Given Sperier's testimony that the knife was a deadly weapon, and his testimony about the knife's size and use, we conclude that there was sufficient evidence that the knife was a deadly weapon.

### 2. *The Knife's Use or Exhibition*

Having determined that there was sufficient evidence that appellant's knife was a deadly weapon, we now consider whether appellant, in the course of committing theft and with the intent to obtain or maintain control of the property, "used or exhibited" a deadly weapon. TEX.PENAL CODE ANN. §§ 29.02(a)(2) & 29.03(a)(2) (Vernon 1989 & Supp.1992). Appellant argues that the "use or exhibition" requirement was not met because complainant never saw the knife and was not aware of it until he was fleeing with the wallet. We disagree.

Appellant's indictment and the jury charge tracked the Penal Code, which states that a person commits robbery if:

(a) ... in the course of committing theft ... and with the intent to obtain or maintain control of the property, he

. . . . .

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX.PENAL CODE ANN. § 29.02(a) (Vernon 1987). A robbery is aggravated if the person commits robbery *and* he:

(1) causes serious bodily injury to another; [or]

(2) uses or exhibits a deadly weapon; . . . .

TEX.PENAL CODE ANN. § 29.03(a) (Vernon Supp.1992).

■ The statute does not mandate that the complainant see or know of the use or exhibition of the deadly weapon. It only requires that, in the course of committing theft and with the intent to obtain or maintain control of the property, the defendant "uses or exhibits a deadly weapon." It does not specify on whom he uses or to whom he exhibits the weapon. Subsection 29.03(a)(2), unlike subsections 29.03(a)(1) and 29.02(a)(2), does not require that the defendant do something to "another." [1] Because subsection 29.02(a)(2) lacks this element, we conclude that it does not require the complainant to see or know of the deadly weapon.

■ We also note that the elements under section 29.02(a) are independent of the elements under section 29.03(a), even though some jury charges and indictments

1. In fact, it is not necessary that the victim of the theft and the victim of the robbery be the same person. *White v. State,* 671 S.W.2d 40, 41–42 (Tex.Crim.App.1984). This further confirms our conclusion that the complainant does not have to witness the use or exhibition of the deadly weapon.

have charged that the defendant "intentionally or knowingly threatened or placed [complainant] in fear of imminent bodily injury or death, *by* use or exhibition of a deadly weapon." *See, e.g., Taylor v. State,* 637 S.W.2d 929, 930 (Tex.Crim.App. [Panel Op.] 1982); *Maxwell v. State,* 756 S.W.2d 855, 858 (Tex.App.—Austin 1988, pet. ref'd). The statute, however, does not compel the use of the word "by," which adds a superfluous element: that the threat was by use or exhibition of a deadly weapon. Rather, the statute defines aggravated robbery as robbery *and* use or exhibition of a deadly weapon. TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon Supp.1992).

 Turning to the sufficiency of the evidence, we conclude that appellant used or exhibited a deadly weapon in the course of committing theft and with the intent to maintain control of the property. "In the course of committing theft" includes conduct that occurs in immediate flight after the theft. TEX.PENAL CODE ANN. § 29.01(1) (Vernon 1987). Thus, the robbery statute proscribes appellant's use of a deadly weapon in his immediate efforts to keep the stolen property. *See Lightner v. State,* 535 S.W.2d 176, 177–78 (Tex.Crim.App. 1976). We overrule the first point.

## HEARSAY TESTIMONY

### A. Complainant's Testimony About the Knife

 In the second point of error, appellant complains that the trial court erred in overruling his objection to complainant's testimony about what Sperier told her about a knife. At trial, complainant testified that, after Sperier knocked down appellant but before he began chasing him, Sperier told her, "You better be careful. He's got a knife." Before she testified to the statement, complainant testified that Sperier appeared to be excited and that his statement related to an exciting event.

Complainant's testimony, although hearsay, was admissible as an excited utterance. *See* TEX.R.CRIM.EVID. 803(2). An excited utterance is a statement relating to a startling event or condition made while the

declarant was under the stress of excitement caused by the event or condition. TEX.R.CRIM.EVID. 803(2). We conclude that the trial court did not err in overruling the hearsay objection. Accordingly, we overrule the second point of error.

### B. Officer's Testimony About Tracing the License Plate

In the fourth point of error, appellant complains that an officer's testimony about tracing a car license-plate number to him was hearsay. He argues on appeal that the testimony was hearsay because it had to have come from other information and that the testimony bolstered the State's identification of him.

Dallas Police Detective David McReynolds testified on direct examination that he traced the license-plate number of the car in which the suspect escaped to determine the car's ownership. He testified that he traced the vehicle to "Florence Jones and Melvin Dwayne Jones." He stated that he ran the name of the registered owner, obtained a photograph of the owner, and showed that photo in a photo lineup to two witnesses. During this testimony, defense counsel objected several times that the testimony was "hearsay," and the trial court overruled the objections.

 For an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. TEX.R.APP.P. 52(a); TEX. R.CRIM.EVID. 103(a). A general objection normally presents nothing for review on appeal. *Williams v. State,* 596 S.W.2d 862, 866 (Tex.Crim.App.1980). Appellant's general objection on the basis of "hearsay" preserved nothing for review. *See Miranda v. State,* 813 S.W.2d 724, 737 (Tex. App.—San Antonio 1991, pet. ref'd); *Martinez v. State,* 732 S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1987, no pet.). The specific complaints now urged on appeal must have been made obvious to the trial court at the time the trial objections were made. *See Miranda,* 813 S.W.2d at 738. We conclude the trial court properly overruled appellant's hearsay objections. We overrule the fourth point of error.

## OPINION ABOUT THE KNIFE

██ In his third point, appellant asserts that the trial court erred in overruling his objection to Sperier's testimony about whether the knife was a deadly weapon. The prosecutor asked Sperier whether the knife was capable of causing death or serious bodily injury in the manner in which appellant held it and the manner in which he used it in slashing at another witness. Sperier replied yes, and defense counsel objected "to that as being outside of his expertise." The prosecutor then asked Sperier whether, in his judgment, the knife was a deadly weapon, and, without objection, Sperier replied yes.

Appellant contends that Sperier's testimony (1) did not provide a sufficient predicate to qualify him to give an opinion that the knife was a deadly weapon and (2) failed to sufficiently establish details about the knife and its use. His second argument goes to the sufficiency of the evidence, which we addressed *supra*. Thus, we address only his first argument here.

Expert testimony is not necessary to establish that a weapon is deadly. *Jackson*, 668 S.W.2d at 725. In *Denham v. State*, the Court of Criminal Appeals held that a person who observed and received a wound from a butcher knife was surely capable of testifying that the knife was a deadly weapon capable of causing death or serious bodily injury. 574 S.W.2d at 131. "This is common knowledge that any lay witness is competent to testify to." *Denham*, 574 S.W.2d at 131.

Similarly, a person who observes a knife at close range and sees it used to slash a shirt should be capable of testifying that the knife was a deadly weapon. Sperier described the knife itself, the manner of its use, and his fear of being stabbed. Sperier as a lay witness was competent to testify to the knife's deadly character. We conclude that the predicate was sufficient to allow Sperier to testify that the knife was a deadly weapon. The third point of error is overruled.

## REQUESTED INSTRUCTION ON THE LESSER–INCLUDED OFFENSE OF THEFT

██ In his fifth point, appellant contends that the trial court erred in failing to give his requested jury instruction on the lesser-included offense of theft. To be entitled to an instruction on a lesser-included offense, the offense must be included within the proof necessary to establish the offense charged. Next, there must be some evidence that, if the defendant is guilty, he is guilty of only the lesser offense. *See Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim.App.1981) (op. on reh'g). When this test is satisfied, and the instruction is requested, the instruction must be given whether the evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *See Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987).

██ The offense of theft is a lesser-included offense of aggravated robbery and robbery. *Royster*, 622 S.W.2d at 447; *Campbell v. State*, 571 S.W.2d 161, 162 (Tex.Crim.App.1978) (op. on reh'g). However, there is no evidence that, if guilty, appellant is guilty only of theft. Complainant testified that she was threatened and placed in fear of imminent bodily injury and death. Unlike *Campbell*, in which the defendant testified that only a theft was committed, appellant presented no evidence that he was guilty only of theft. *See Campbell*, 571 S.W.2d at 162. Thus, the trial court did not err in refusing to give a charge on the lesser-included offense of theft. *See Royster*, 622 S.W.2d at 447. We overrule the fifth point.

## IMPROPER JURY ARGUMENT

In the sixth point of error, appellant complains that the trial court erred in overruling his objection to the prosecutor's improper jury argument during the guilt-innocence phase of the trial. He claims that the prosecutor improperly argued his opinion to the jury.

The State argued:

Well, the fact of the matter is, we brought you more than enough *evidence* to convince you beyond a reasonable doubt of this man's guilt, and there's no way that if you base your decision upon the *evidence* in this case that you can come back into this courtroom and say, after having taken an oath to render a true verdict: Not guilty, my friend; go home. You can't do that. You violate your oaths.

(Emphasis added.) The defense counsel objected to the statement as being outside the proper scope of argument, and the trial court overruled the objection.

 Areas of permissible jury argument include: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Drew v. State*, 743 S.W.2d 207, 221 (Tex.Crim.App.1987). The prosecutor's argument here was a reasonable deduction from the evidence. He was not unqualifiedly expressing his opinion of appellant's guilt, but was legitimately deducing the fact that the evidence, as he viewed it, established that appellant was guilty beyond a reasonable doubt. *See Davis v. State*, 642 S.W.2d 510, 512–13 (Tex.Crim. App. [Panel Op.] 1982).

 It is well settled that a prosecutor may argue his opinions concerning issues in the case as long as the opinions are based on the evidence in the record and do not constitute unsworn testimony. *Penrice v. State*, 716 S.W.2d 107, 109 (Tex. App.—Houston [14th Dist.] 1986, no pet.). Even if an argument is improper, it will not constitute reversible error unless, in light of the record as a whole, it was extreme or manifestly improper, violative of a mandatory statute, or injected new and harmful facts into evidence. *Drew*, 743 S.W.2d at 221.

The complained-of statement, while hyperbolic, did not inject new facts into evidence that were harmful to appellant, nor was it manifestly unjust, nor did it indicate that the prosecutor possessed independent facts of guilt that were not introduced into evidence. *See Penrice*, 716 S.W.2d at 109.

The statement occurred near the end of the prosecutor's closing argument, after his rendition of the evidence. *See Penrice*, 716 S.W.2d at 109. Further, there was strong evidence of appellant's guilt. We conclude that when the entire argument is considered in light of the evidence adduced at trial, the prosecutor's remarks did not rise to the level of reversible error. We cannot say that there is a reasonable possibility that the argument complained of might have contributed to the conviction. *Drew*, 743 S.W.2d at 222. Therefore, we overrule the sixth point of error.

## ADMISSION OF PENITENTIARY PACKETS

In the seventh and final point of error, appellant contends that the trial court erred during the punishment phase in admitting penitentiary records that contained unsigned judgments and sentences. Specifically, he complains of State's Exhibits 12, 13, 14, and 15. He asserts that article 42.01 of the Code of Criminal Procedure requires a judgment and sentence to be signed.

 First, we note that the judgment and sentence in State's Exhibit 13 is signed by the judge, contrary to appellant's assertion. Next, the judgments and sentences in State's Exhibits 12, 14, and 15 were entered in 1979, 1976, and 1975, respectively. At that time, article 42.01 provided: "A 'judgment' is the declaration of the court entered of record, showing...." TEX.CODE CRIM.PROC.ANN. art. 42.01, § 1 (Vernon 1979). The provision did not require that a judgment be signed; the fact that the judge had not signed the prior judgment and sentence did not affect the validity of the former conviction. *Lackey v. State*, 638 S.W.2d 439, 455 (Tex.Crim.App.1982).

 When appellant was tried for this aggravated robbery in 1991, article 42.01 provided: "A judgment is the written declaration of the court signed by the trial judge...." TEX.CODE CRIM.PROC.ANN. art. 42.01, § 1 (Vernon Supp.1991). He states that this provision requires the judge's signature on the judgments and sentences.

This is correct, but only for judgments entered after the effective date of the amendment, September 1, 1981. *See* Act of June 8, 1981, 67th Leg., R.S., ch. 291, § 149, 1981 Tex.Gen. Laws 761, 820. Because there was no signature requirement at the time of appellant's prior convictions, we conclude that the trial court did not err in admitting the unsigned penitentiary records. We overrule the seventh point of error.

The trial court's judgment is affirmed.