NUMBER 13-99-179-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI



 

ARNOLDO RUIZ , Appellant, 


v.


THE STATE OF TEXAS , Appellee.





On appeal from the 275th District Court

of Hidalgo County, Texas.




O P I N I O N


Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Justice Dorsey


 A jury convicted appellant, Arnoldo Ruiz, of two counts of aggravated robbery. The trial court sentenced him to two
concurrent fifty-year prison terms. Appellant raises nineteen points of error for our consideration. We affirm.

I. Facts


 On June 4, 1998, Samuel Rodriguez was working at a Hop-N-Shop store in Mission when appellant threatened him by
making a "stabbing movement" with his right hand. Rodriguez saw a metallic object in his hand. Appellant ordered
Rodriguez to open the cash register and to get on the floor. Appellant took the money, and while Rodriguez was lying on
the floor, appellant hit him, knocking him out. Rodriguez suffered a broken nose during the attack. Officer Larralde
testified that Rodriguez told him appellant had used "a stainless steel weapon, possibly some scissors" to commit the
robbery.

 On June 7, 1998, Andres Ayala was working at the Economy Drive-In in Mission when appellant held a broken bottle to
Ayala's face and demanded the money. After appellant took the cash from the till he pointed a pair of scissors at Ayala's
chest and told him that he would cut him open and watch him bleed. Ayala was afraid that appellant might kill him. He
ordered Ayala into the office and then left the store. Ayala said that the scissors were six inches long and shiny silver.

 Two days after the Economy Drive-In robbery police arrested appellant at a park behind that store. Police conducted a
consent search of his apartment and found a pair of scissors.

II. Sufficiency of the Evidence




 By points one and two appellant asserts that the evidence is legally and factually insufficient to support his conviction for
aggravated robbery of Samuel Rodriguez. He argues that the evidence does not prove his identity as the robber or that he
used a deadly weapon. 

 When addressing the legal sufficiency of the evidence we apply the test set forth in Jackson v. Virginia, 443 U.S. 307, 319
(1979). When addressing the factual sufficiency of the evidence we apply the test set forth in Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996).

 The charge included two application paragraphs. The first alleged that appellant had robbed Rodriguez by using scissors. 
The second alleged that he had robbed him by using an object unknown to the grand jurors. Thus our first inquiry is
whether the evidence is sufficient to show that appellant used scissors during the robbery.

 The evidence showed that Rodriguez saw a metallic object in appellant's hand and told Officer Larralde that appellant had
used a stainless-steel weapon, possibly scissors. Andres Ayala identified appellant as the person who robbed him using
scissors. A search of appellant's apartment revealed a pair of scissors. The jury is entitled to draw reasonable inferences
from circumstantial evidence to ultimate facts. Kelley v. State, 968 S.W.2d 395, 398 (Tex. App.-Tyler 1998, no pet.). Thus
we hold that a rational jury could find that appellant used scissors as a weapon to rob Rodriguez. 

Scissors As A Deadly Weapon



 Robbery is aggravated if, in committing it, the actor "uses or exhibits a deadly weapon." Tex. Penal Code Ann. §
29.03(a)(2) (Vernon 1994). The definition of a "deadly weapon" includes: "anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury." Id. § 1.07(a)(17) (Vernon 1994).

 Scissors are not a deadly weapon per se; thus, the State had the burden of proving the scissors were capable of causing
death or serious bodily injury in the manner of their use or intended use. Cases involving knives as deadly weapons
emphasize that we consider several factors in determining whether a weapon is deadly, such as, its use or intended use, its
size and shape, and its capacity to produce death or serious bodily injury. Denham v. State, 574 S.W.2d 129, 130 (Tex.
Crim. App. 1978); Jackson v. State, 668 S.W.2d 723, 725 (Tex. App.-Houston [14th Dist.] 1983, pet. ref'd). Manner of use
is the most important criterion. Dominique v. State, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980) (scissors, in the manner
of its intended use, was deadly weapon); Jones v. State, 843 S.W.2d 92, 97 (Tex. App.-Dallas 1992, pet. ref'd). It is
sufficient if the weapon is capable of causing death or serious bodily injury or is displayed in a manner conveying an
express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied. Jones, 843 S.W.2d
at 96-97; Jackson, 668 S.W.2d at 725.

 Here appellant used the scissors in a threatening, stabbing manner, implying that serious bodily injury or death would
result if Rodriguez did not open the cash register. During trial Rodriguez positively identified appellant as the perpetrator. 
We hold that the evidence is legally and factually sufficient to sustain a finding that the scissors, in the manner of their
intended use constituted a deadly weapon. See Dominique, 598 S.W.2d at 286. We also hold that a rational jury could find
that appellant used the scissors to obtain or maintain control of the money he had taken from the till. The verdict is not so
contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. Accordingly we overrule points
one and two.

 By points seven and eight appellant asserts that the evidence is legally and factually insufficient to support his conviction
for aggravated robbery of Andres Ayala. The charge for this offense included two application paragraphs. The first alleged
that appellant robbed Ayala by using scissors as a deadly weapon, and the second alleged robbery by using a piece of
broken glass as a deadly weapon.

 The record reflects that after appellant grabbed the cash from the till he pointed scissors at Ayala's chest and told him that
he would cut him open and watch him bleed. Ayala was afraid that appellant might kill him. We hold that appellant's act
of holding the scissors to Ayala's chest accompanied by a threat to cut him open and watch him bleed is legally and
factually sufficient evidence to sustain a finding that the scissors, in the manner of their intended use, constituted a deadly
weapon. See Dominique, 598 S.W.2d at 286. A rational jury could find that appellant used the scissors to obtain or
maintain control of the money he had taken from the till. The verdict is not so contrary to the overwhelming weight of the
evidence that it is clearly wrong and unjust. We overrule points seven and eight.

III. Variance


 By points three, four, and six appellant asserts that (1) count one of the indictment is fundamentally defective and (2) that a
material variance exists between the allegations in count one, the evidence, and the charge. Count one of the indictment
included two allegations of aggravated robbery and one allegation of aggravated assault. One allegation alleged that
appellant had robbed Samuel Rodriguez by using scissors. The second alleged that he had assaulted him by use of an
object unknown to the grand jury. The third alleged that he robbed him by using his foot as a deadly weapon.

 The charge in two paragraphs alleged that appellant robbed Rodriguez by using scissors or an object unknown to the grand
jury. Defense counsel did not object to the charge on the ground that it alleged that appellant had committed the robbery by
using an object unknown to the grand jury, which was not alleged in the indictment. Nevertheless the evidence supports the
allegation that appellant robbed Rodriguez by using scissors. When as in this case a general verdict is returned and the
evidence is sufficient to support a finding under any of the paragraphs submitted to the jury the verdict will be applied to
the paragraph finding support in the facts. Manrique v. State, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999). We overrule
points three, four, and six.

 By point five appellant asserts that he was indicted for using a weapon unknown to the grand jurors, even though the grand
jury failed to use diligence to determine if a weapon was used. Whether the grand jury failed to use diligence is irrelevant
to the issue of guilt, because appellant was indicted for robbing Rodriguez by using scissors as a deadly weapon. We
overrule point five.

IV. Exculpatory Evidence


 By points nine and ten appellant asserts that his right to a fair trial was violated because the State did not timely disclose
exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1983). Specifically he alleges that two key witnesses
to the Hop-N-Shop robbery, David Inocencio and Armando Martinez, were unavailable to him because the State withheld
their identity and the information they provided until after these witnesses had left town and were unavailable for subpoena.

 The State violates due process when it suppresses evidence in its possession favorable to an accused when the evidence is
material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id.; Wyatt v. State,
23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To prevail on a Brady claim when the State's disclosure is tardy the defendant
must show that the late disclosure prejudiced him. Id. The defendant must show a reasonable probability that, had the State
disclosed the evidence to the defense earlier, the proceeding would have had a different outcome. Id.; Wyatt, 23 S.W.3d at
27.

 We hold that appellant has not met his burden under Brady, because he has not shown (1) that the State suppressed
evidence in its possession, or (2) that a reasonable probability existed that, had the State disclosed the witnesses' statements
or identities to the defense earlier, his trial would have had a different outcome.

 Officers Ortega and Hernandez took the statements of Inocencio and Martinez, who gave them the names of two possible
suspects, Jessie Maldonado and "El Reynosa." Police found Maldonado with a companion and put their pictures in photo
lineups. Both robbery victims saw the lineups but could not identify them as the robber. Later police found El Reynosa,
who provided an alibi. Police verified the alibi and eliminated him as a suspect.

 Officer Perez testified that he gave the statements of Inocencio and Martinez to the State about December 10, 1998. The
State's attorney's testimony was that he gave all of the exculpatory evidence to defense counsel as soon as he learned about
it. He said that the defense had all the exculpatory evidence at the time of trial.

 On December 15, 1998, the trial court granted appellant a continuance to January 4, 1999. Jury selection began on January
5, 1999. This continuance gave appellant time to evaluate the exculpatory evidence. We overrule points nine and ten.

V. Challenge For Cause


 By point eleven appellant asserts that the trial court erred in overruling his challenge for cause. During voir dire the State
revealed to the jury that several police officers were involved in this case. Later the State asked a venire member, 
Rosalinda De La Rosa, if she could serve on the jury if she only had to decide guilt or innocence. She replied affirmatively. 
She was unsure, however, if her thoughts would interfere with her judgment. When the State asked her about these
thoughts she said, "[H]ow could all these [police] be wrong?" She qualified her statement by saying, "I'm not going to
know unless I hear them, unless I hear the facts." On cross, she indicated she had not formed an opinion on guilt or
innocence and said she was "going to try to be fair and weigh all the facts." She indicated that she does not give any more
weight or credibility to the testimony of police officers than she gives to the testimony of other witnesses.

 Counsel challenged her for cause, arguing that she had "formed an opinion that there's no way that so many officers could
be wrong, although she did recant it." The trial court denied the challenge for cause and also denied counsel's request for
an additional peremptory strike.

 To preserve error on a trial court's denial of a challenge for cause, "it must be demonstrated on the record that appellant
asserted a clear and specific challenge for cause, that he used a peremptory challenge on that juror, that all his peremptory
challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the
jury." Green v. State, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996). Here the record reflects that appellant cannot meet the
elements stated in Green, because he has not shown that an objectionable juror sat on the jury. Further we believe that the
trial court properly overruled the challenge for cause. A juror who will ultimately be guided by her personal views rather
than the law is not qualified to sit on a jury. Harris v. State, 784 S.W.2d 5, 20 (Tex. Crim. App. 1989). Here the record
reflects that De La Rosa could serve as a fair and impartial juror and that she would judge police officers by the same
standard as other witnesses. We overrule point eleven.

VI. Ineffective Assistance Of Counsel


By points twelve through nineteen appellant asserts that he received ineffective assistance of counsel. To determine
ineffective assistance we apply the two-pronged test in Strickland v. Washington, 466 U.S. 668 (1984). Under the first
prong a defendant must show that counsel's performance was "deficient," which requires showing that counsel made errors
so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Id. at 687. The defendant
must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Under the second
prong the defendant must show that the deficient performance prejudiced him, meaning that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687. 
A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694

 Assuming, without deciding, that appellant's counsel was deficient, appellant has not proved to a reasonable probability
that, but for counsel's alleged failures the result of the proceeding would have been different. Appellant has failed to
demonstrate prejudice from the alleged deficiencies. See Everage v. State, 893 S.W.2d 219, 223-24 (Tex. App.-Houston
[1st Dist.] 1995, pet. ref'd). We overrule points twelve, thirteen, fourteen, fifteen, seventeen, and eighteen.

 By point sixteen appellant asserts that he received ineffective assistance because counsel failed to challenge his stop and
detention. The record reflects that the Hop-N-Shop had a video-tape recorder which recorded the robbery. Police viewed
the robbery on the tape and got a description of the suspect. About two days after the robbery of the Economy Drive-In
Officers Hernandez and Ortega saw appellant in Lopez Park, which is located behind that store. Because of appellant's
size, height, and the fact he was wearing shorts and long tube socks, Hernandez felt he looked "a lot" like the suspect who
robbed the Hop-N-Shop. Ortega asked appellant his name, and appellant identified himself as Juan Reyes. Later,
Hernandez remembered that appellant's name was Arnoldo Ruiz. The police returned to the park and arrested appellant for
failure to identify. He was photographed, and police used his picture for a photo lineup. This lineup helped police identify
appellant as the robber.

 Texas Penal Code Section 38.02(b) makes it an offense to intentionally give a a false or fictitious name to a peace officer
who has (1) lawfully arrested the person, (2) lawfully detained the person, or (3) requested the information from a person
the peace officer has good cause to believe is a witness to a criminal offense. Tex. Penal Code Ann. § 38.02(b) (Vernon
1994). Here the police believed that appellant looked a lot like the Hop-N-Shop robbery suspect. Thus they had the right
to briefly detain him to find out his name. Mays v. State, 726 S.W.2d 937, 944 (Tex. Crim. App. 1988). Because appellant
gave a false name the police could arrest him. See Tex. Penal Code Ann. § 38.02(b) (Vernon 1994). Accordingly counsel
was not ineffective for failing to challenge appellant's photo as the fruit of an unlawful arrest. We overrule point sixteen.

VII. Sentencing

By point nineteen appellant complains that the trial court imposed sentence without a pre-sentence investigation report
(PSI). The record reflects that after the trial court discharged the jury it ordered a PSI. However appellant has not
produced any evidence to show that the probation department failed to prepare a PSI or that the trial court failed to use the
PSI prior to sentencing him. Even assuming that the trial court did not have the PSI appellant fails to show harm. 
Pre-sentence recommendations prepared under the direction of a court are, by their very wording, only "recommendations"
and are not binding on the trial court, which is afforded broad discretion in determining the appropriate punishment. 
Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); Carroll v. State, 12 S.W.3d 92, 97 (Tex. App.-Fort Worth
1999, no pet.). We overrule point nineteen.

 We AFFIRM the trial court's judgment.


______________________________

J. BONNER DORSEY,

Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 29th day of November, 2001.