TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00718-CR

NO. 03-08-00719-CR






Jeffrey Todd Cook, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT

NOS. D-1-DC-08-202690, D-1-DC-08-202691

HONORABLE BOB PERKINS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 These two cause numbers were consolidated for trial. In cause number D-1-DC-08-202690, the trial court found appellant Jeffrey Todd Cook guilty of aggravated robbery with a deadly
weapon, see Tex. Penal Code Ann. § 29.03(a)(2) (West 2003), and assessed punishment at
twenty years' imprisonment. In cause number D-1-DC-08-202691, the trial court found Cook guilty
of unlawful restraint, enhanced to a third-degree felony by a finding that he recklessly exposed the
victim to a substantial risk of serious bodily injury, see id. § 20.02(c)(2)(A) (West 2003), and
assessed punishment at ten years' imprisonment. In four points of error on appeal, Cook challenges
the legal and factual sufficiency of the evidence to support the convictions. We affirm the judgment
of conviction for aggravated robbery, modify the judgment of conviction for unlawful restraint to
reflect a class A misdemeanor, rather than a third-degree felony, and affirm the conviction for
unlawful restraint as modified.


BACKGROUND

 On May 7, 2008, officers with the Austin Police Department were conducting
surveillance on Cook's apartment for the purpose of executing outstanding arrest warrants for Cook. 
Officer Eric De Los Santos testified that after several hours of surveillance, undercover officers
witnessed Cook leave the apartment and enter a gold Mitsubishi. (1) The undercover officers followed
Cook in unmarked cars, and then a marked patrol car attempted to stop Cook as he drove along
Interstate Highway 35. Rather than stopping, Cook exited the freeway and entered an apartment
complex located along the access road to I-35, near Yager Lane. According to De Los Santos, Cook
then left his vehicle in the apartment complex parking lot and ran toward the end of the parking lot,
jumped the fence, and headed into the wooded area bordering the complex. The officers who were
following Cook then attempted to establish a perimeter around the wooded area and requested back-up from Air One, the Austin Police Department helicopter. De Los Santos testified that after about
thirty minutes of searching, another officer spotted Cook in a condominium complex on Yager Lane,
but that Cook then "took off running, and the officer lost sight of him." After approximately
thirty more minutes of searching, the officers learned from a 911 caller that Cook had broken into
a unit in the complex.

 Lisa Torres, the victim in this case, testified at trial that she had just gotten out of the
shower when she heard police helicopters and sirens outside her apartment. After hearing this
commotion, Torres started to get dressed, but was interrupted by what she described as "a big ol'
bang on the door." She went into the living room, where she saw Cook standing inside the
apartment, looking out the peep hole in the front door. Torres testified that Cook motioned for her
to be quiet and told her to put some clothes on. Once Torres was dressed, Cook motioned for her
to return to the living room, where he told her again to stay quiet. At that time, Torres noticed that
Cook had broken the front door when he forced his way into the apartment and that the door would
no longer stay closed. According to Torres, Cook then asked her for a knife and followed her into
the kitchen in order to retrieve one. Torres testified, "I opened up the drawer and I got the smallest
possible knife I could because I thought maybe he was going to stab me or something." Torres
further testified that she did not know what Cook planned to do with the knife, but that after she gave
it to him, "[h]e went and he jammed it in the door so the door would stay shut." Cook explained to
Torres that he was "on the run from the cops," asked her several times if anyone else was in the
apartment, and requested that she show him around the apartment to prove that nobody else was
there. Torres testified that as Cook followed closely behind her, walking around the apartment, he
appeared to be "very, very paranoid," and "very rabid." 

 Torres further testified that she asked Cook multiple times if she could leave, but that
he refused to let her go, instead insisting that she sit down and be quiet. He also demanded that
Torres pour alcohol on his back, which was covered in cuts, or "slashes," according to Torres. At
some point, Cook asked Torres to give his girlfriend directions to the apartment over the phone. 
Torres testified that when she explained to Cook that she did not know how to give directions to the
apartment, he became angry and accused her of lying. Torres was eventually able to find a piece of
mail listing the correct address of the condominium, which she then relayed to Cook's girlfriend
over the phone.

 As Cook waited on his girlfriend to come to the apartment, he requested that Torres
provide him with black clothes to wear. Torres complied, producing some of her boyfriend's
clothes. While Cook was changing into the new clothes, he took a knife out of the pocket of the
pants he had been originally been wearing, "held it in his hand for awhile," and then placed it in the
pocket of the new pants. Torres testified that she was about three or four feet away from Cook when
he took out the knife and that he held it in his hand for ten or fifteen seconds before placing it in his
pocket. When asked whether she was afraid when she saw the knife, Torres responded affirmatively
and further stated, "Just his state of being, the way he was, real paranoid and scared looking . . . kind
of just pacing, you know, looking out the back door and the front door and just thinking somebody
is in there . . . throughout the whole time he was very, very scary to me." Torres also testified that
when Cook took the knife out of his pocket, "I thought he was going to kill me." Torres was able
to identify the knife at trial, stating, "I remember it well."

 Shortly after Cook changed clothes, Torres's boyfriend, Steve Vargas, arrived at the
apartment. When Vargas knocked on the door, Cook retreated to the kitchen and instructed Torres
to let him in. Torres testified that when she opened the door, she pushed Vargas out of the way and
said, "[T]here is a man here holding me hostage, leave, let's go." Vargas testified that Torres was
"hysterical" when she answered the door, and that "[s]he opened the doors, pushed me away back,
and told me, get out, he has a knife."

 Torres and Vargas then got into Vargas's car and drove across the parking lot while
Vargas called 911. Vargas testified that he stopped the vehicle in a location where he could keep
an eye on the front door of the apartment and that Cook began walking toward the car, leading
Vargas to pull out a gun that he happened to be carrying with him. According to Vargas, while he
had his gun drawn on Cook, another vehicle drove up "and [Cook] jumped in the back seat and they
sped off." At that time, Vargas again called 911 and told the operator that Cook was leaving the
scene in a white Ford Taurus. The 911 operator then relayed that information to the officers on the
scene, who began pursuing the vehicle. 

 Officer Thomas Lopatowski, who was riding in Air One, testified that he observed
a marked police car attempting to stop the Taurus after it left the condominium complex parking lot. 
Lopatowski testified that the Taurus pulled into the parking lot of a grocery store located along the
I-35 frontage road and "[t]he vehicle actually came to a stop for a brief second, and as the officer
attempted to get out of his car and approach the vehicle, the vehicle fled." According to Lopatowski,
the driver continued to evade the police officers for another twelve to thirteen minutes, causing
two traffic accidents in the process. Cook eventually exited the vehicle and began to flee on foot,
where he was apprehended by police.

 Cook was charged with aggravated robbery, unlawful restraint, and evading arrest. 
After a bench trial, the trial court found Cook guilty of all three charges, and sentenced him to
twenty years' imprisonment for aggravated robbery, ten years' imprisonment for unlawful restraint,
and two years' imprisonment for evading arrest, with the sentences to run concurrently. Cook filed
notices of appeal of his convictions for aggravated robbery and unlawful restraint, but did not
appeal his conviction for evading arrest. In four issues on appeal, Cook argues that there is legally
and factually insufficient evidence to support his convictions for aggravated robbery and
unlawful restraint.


STANDARD OF REVIEW

 In reviewing the legal sufficiency of the evidence, we review all of the evidence in
the light most favorable to the verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007). The question presented is whether a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979);
Clayton, 235 S.W.3d at 778. We assume that the trier of fact resolved conflicts in the testimony,
weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. 
Clayton, 235 S.W.3d at 778.

 In reviewing the factual sufficiency of the evidence, we consider all the evidence in
a neutral light, while giving due deference to the fact finder's determination. See Sims v. State,
99 S.W.3d 600, 601 (Tex. Crim. App. 2003); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim.
App. 2002). We must then determine whether the evidence supporting the verdict is so weak or so
against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. 
See Steadman v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009). In a bench trial, the trial court
is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See
Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). We may not reweigh the evidence
and substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000).


DISCUSSION

Aggravated Robbery

 In his first and second points of error, Cook contends that the evidence was legally
and factually insufficient to support the conviction for aggravated robbery. Specifically, Cook argues
that the State did not carry its burden to prove that he used a deadly weapon in the offense--a finding
that elevated the offense from robbery to aggravated robbery, see Tex. Penal Code Ann. § 29.03, and
limited his eligibility for parole. (2) See Tex. Gov't Code Ann. § 508.145(d) (West Supp. 2008);
Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2008).

 To prove the offense of robbery, the State was required to establish that Cook
(1) unlawfully appropriated Vargas's property--his clothes--with the intent to deprive Vargas of
the property and (2) in the process, he intentionally or knowingly threatened Torres or placed her in
fear of imminent bodily injury or death. (3) See Tex. Penal Code Ann. § 29.02 (West 2003). To prove
the offense of aggravated robbery as alleged in the indictment, the State had to further establish that
Vargas used or exhibited a deadly weapon--a knife--in the process of committing the robbery. See
id. § 29.03(a)(2). "[A] person 'uses or exhibits a deadly weapon' under the aggravated
robbery statute if he employs the weapon in any manner that 'facilitates the associated felony.'"
McCain v. State, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000) (quoting Patterson v. State,
769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

 While two knives were involved in this offense, the trial court appears to have based
its judgment on Cook's use of the folding knife in his pants pocket, rather than the kitchen knife he
used to hold the door closed. (4) In light of our determination that the evidence is sufficient to uphold
a deadly-weapon finding based on the folding knife, we need not also determine whether the
evidence is sufficient to make a deadly-weapon finding regarding the kitchen knife.

 A knife is not considered a deadly weapon per se. See Blain v. State, 647 S.W.2d
293, 294 (Tex. Crim. App. 1983). Instead, a knife becomes a deadly weapon if, in the manner of its
use or intended use, it is capable of causing death or serious bodily injury. See Tex. Penal Code Ann.
§ 1.07(a)(17)(B) (West Supp. 2008); Tucker v. State, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). 
When no actual injury is sustained, the State must present evidence of other factors to establish that
a knife is a deadly weapon. See Blain, 647 S.W.2d at 294; Victor v. State, 874 S.W.2d 748, 751
(Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). These factors include (1) the manner of its use
or intended use, (2) the size, shape, and sharpness of the blade, (3) implied or express threats made
by the accused, (4) the physical proximity of the accused and the victim, (5) testimony regarding the
knife's life-threatening capabilities, and (6) the victim's fear of serious bodily injury or death. See
Blain, 647 S.W.2d at 294; Rivera v. State, 271 S.W.3d 301, 304 (Tex. App.--San Antonio 2008,
no pet.); Victor, 874 S.W.2d at 751. "Each case must be examined on its own facts to determine
whether the fact finder could have concluded from the surrounding circumstances that the knife was
used or was to be used as a deadly weapon." Billey v. State, 895 S.W.2d 417, 420-21
(Tex. App.--Amarillo 1995, pet. ref'd). In order to establish that a knife was a deadly weapon, the
State is not necessarily required to introduce the knife itself into evidence or to provide expert
testimony that the knife was capable of causing death or serious bodily injury. See Rivera,
271 S.W.3d at 304; Victor, 874 S.W.2d at 751.

 The evidence can be sufficient to classify a knife as a deadly weapon if it "is
displayed in a manner conveying an express or implied threat that serious bodily injury or death will
result if the aggressor is not satisfied." Jones v. State, 843 S.W.2d 92, 96-97 (Tex. App.--Dallas
1992, pet. ref'd). "Where the victim testifies that he or she was in fear of serious bodily injury or
death, a verbal threat by the accused is not required for the fact finder to conclude that threats were
actually made." Billey, 895 S.W.2d at 422; see also Tisdale v. State, 686 S.W.2d 110, 115
(Tex. Crim. App. 1985) (op. on reh'g) (holding that rational trier of fact could find beyond
reasonable doubt that knife was deadly weapon where appellant's action of showing knife to victim
was perceived by victim as implicit threat).

 Several factors that can establish a knife as a deadly weapon were present in this case,
including a close proximity between the victim and the accused, an implied threat by the accused,
the victim's fear of serious bodily injury or death, and testimony regarding the knife's life-threatening capabilities. The proximity factor was established by Torres's testimony that when Cook
produced the folding knife, she was approximately three or four feet away from him. She also
testified that he followed closely behind her everywhere she went in the apartment. 

 Furthermore, in light of Torres's testimony that Cook held the knife in his hand for
ten or fifteen seconds while standing three or four feet away from her and that, when she saw the
knife, "I thought he was going to kill me," a reasonable fact finder could conclude that Cook made
an implied threat to use the knife to inflict serious bodily injury or death. See Billey, 895 S.W.2d at
422 (stating that victim's testimony regarding fear of serious bodily injury or death may be sufficient
for fact finder to conclude that threat was made, even in absence of verbal threat). This testimony
also supports another relevant factor--the victim's fear of serious bodily injury or death. See Victor,
874 S.W.2d at 751. Torres's testimony regarding her fear of serious bodily injury or death after
seeing the knife is further supported by Vargas's testimony that as soon as he arrived at the
apartment, Torres "opened the doors, pushed me away back, and told me, get out, he has a knife." 

 In addition, the State entered the knife into evidence and presented expert testimony
that it was capable of causing serious bodily injury or death. On direct examination, De Los Santos
testified as follows:


State: Officer De Los Santos, you said you have been an Austin police
officer for 20 years approximately?


De Los Santos: Yes, ma'am.


State: And do you have training and experience with regard to weapons?


De Los Santos: Yes, ma'am.


State: And I am going to show you what has been marked as State's
Exhibit No. 3. What do you recognize this to be?


De Los Santos: A folding knife.


State: And based on your training and experience, would this folding
knife be capable of causing serious bodily injury or death?


De Los Santos: Yes, ma'am.



 Cook argues, however, that De Los Santos's testimony is insufficient
because the officer did not actually open and examine the knife blade. On cross-examination,
De Los Santos testified:


Defense: And with respect to State's Exhibit 3 [the folding knife], was this
morning here in court the first time you had seen it?


De Los Santos: Yes, sir.


Defense: And as I showed it to you now and you just looked at it, you see
that, in fact, it is taped up inside a Ziploc baggy. Is that the
condition you have always observed it in since this morning?


De Los Santos: Yes, sir.


Defense: So when you testified that it was capable of causing serious
bodily injury or death, that's a conclusion based on certain
assumptions about State's Exhibit 3, not based on any personal
examination of that object; isn't that true?


De Los Santos: That's correct, sir.


 The State established, however, that De Los Santos was a twenty-year police
officer with training and experience related to weapons. De Los Santos could reasonably have
formed an opinion regarding the knife's capacity to inflict serious bodily injury or death based on
his training and experience with folding knives similar in exterior appearance to the one used by
Cook. See Magana v. State, 230 S.W.3d 411, 414 (Tex. App.--San Antonio 2007, pet. ref'd)
(holding that deadly-weapon finding was supported by doctor's testimony that "although he did not
see the knife, he considered a small pocket knife to be a deadly weapon and that it is capable of
causing serious bodily injury or death"). 

 Cook further complains that the trial court, as finder of fact, did not unfold and
examine the knife before making a determination that it should be classified as a deadly weapon. 
The record does not affirmatively demonstrate whether the trial court actually unfolded the knife. (5) 
Despite Cook's argument to the contrary, the fact that the knife was taped closed at the time it was
forwarded to this Court does not definitively establish that the trial court did not untape it, examine
the blade, and tape it closed again. The State explained at trial that the knife was not taped closed
at the time it was seized "and it was taped when it was put into evidence. The inference is that it
wouldn't stay folded on its own or else they wouldn't have taped it." We note also that the blade of
the knife is partially visible even when the knife is taped closed, and that the approximate length and
width of the blade could be ascertained by examining it in this manner. (6) In any event, even if the
trial court did not unfold the knife and examine the blade, failure to do so would not necessarily be
dispositive, as the State was not required to introduce the knife into evidence in order to meet its
burden of proof. See Victor, 874 S.W.2d at 751.

 Cook further argues that even if the knife could be considered a deadly weapon,
he did not employ the knife in a manner that would facilitate the underlying offense and therefore
did not "use or exhibit" a deadly weapon under the aggravated robbery statute. See McCain,
22 S.W.3d at 503. In McCain, the court of criminal appeals held that the evidence was legally and
factually sufficient to uphold a deadly-weapon finding where the appellant had a knife in his pocket
during a robbery, but did not touch, brandish, refer to, or overtly display the knife in any way other
than having it partly sticking out of his pocket. Id. at 499. The court held that the knife facilitated
the underlying crime because "its presence was used by appellant to instill in the complainant
apprehension, reducing the likelihood of resistance during the encounter." Id. at 503. The same is
true in the present case.

 In determining whether the knife in this case constituted a deadly weapon, and
whether it was used or exhibited to facilitate the underlying offense, we must consider the totality
of the circumstances. See Curry v. State, 674 S.W.2d 495, 498 (Tex. App.--Fort Worth 1984,
pet. ref'd) (stating that fact finder "may consider all of the facts of a case" in determining deadliness
of weapon). Torres had just finished showering and was not yet dressed when she heard police
sirens and helicopters outside her apartment, followed by a loud noise coming from her living room. 
Upon entering the living room, she discovered that a strange man, likely the source of all the
commotion and police activity she had just heard, had broken into the home using enough force to
do significant damage to her front door. Shortly thereafter, Torres learned that the intruder was on
the run from police, covered in cuts and scratches, and carrying a knife. He ignored her repeated
pleas that she be allowed to leave the apartment, demanded that she provide him with a kitchen
knife, which he then shoved into her front door, and required her to supply him with clothes,
presumably to facilitate further flight from the police. He also followed her around the apartment,
walking closely behind her and acting "very paranoid" and "very rabid." Finally, as Cook was in the
act of stealing Vargas's clothes, he held his knife in his hand for ten or fifteen seconds while
standing three or four feet away from Torres. As the trial court pointed out at trial, Cook could have
transferred the knife from one pair of pants to the other in an inconspicuous manner, concealing it
in his hand so that Torres could not see it. Instead, he chose to hold the knife where Torres could
see it, making what Torres took to be an implied threat and leading her to believe that Cook was
going to kill her. As Vargas testified, Torres was "hysterical" when she escaped the apartment and
the first thing she said was, "[G]et out, he has a knife." The trial court was also presented with
expert testimony regarding the knife's capacity to inflict serious bodily injury or death. While this
is a close case, the appropriate standard of review for determining legal sufficiency is whether "after
viewing the evidence in the light in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson,
443 U.S. at 319 (1979); see also Clayton, 235 S.W.3d at 778. In light of this standard, we cannot
conclude that the evidence is legally insufficient to support the trial court's determination that the
folding knife was a deadly weapon and that Cook used or exhibited it to facilitate the underlying
offense of robbery.

 We similarly hold that, viewing the evidence in a neutral light and taking care to
avoid reweighing the evidence or substituting our judgment for that of the fact finder, the verdict is
not contrary to the great weight and preponderance of the available evidence. See Sims, 99 S.W.3d
at 601. The evidence is therefore factually sufficient to support Cook's conviction for aggravated
robbery. Cook's first and second issues are overruled.

 

Unlawful Restraint

 In his third and fourth issues on appeal, Cook argues that the evidence is legally
and factually insufficient to establish that while Torres was restrained, he recklessly exposed her to
a "substantial risk of serious bodily injury." This element is significant because it elevated Cook's
conviction for unlawful restraint from a misdemeanor to a third-degree felony. See Tex. Penal Code
Ann. § 20.02(c)(2)(A). Cook argues that while Torres testified that she felt threatened, she did not
describe any distinct conduct on his part that created a substantial risk of serious bodily injury. 
We agree.

 The statute does not allow a conviction for felony unlawful restraint based solely
on the victim's fear of serious bodily injury. Rather the defendant must have recklessly exposed the
victim to a substantial risk of serious bodily injury. Compare id. (requiring finding that defendant
"recklessly expose[d] the victim to a substantial risk of serious bodily injury"), with id. § 29.02(a)(2)
(offense of robbery requires finding that defendant "threaten[ed] or place[d] another in fear of
imminent bodily injury or death"). 

 Under the penal code, "[a] person acts recklessly, or is reckless, with respect to
circumstances surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result
will occur." Id. § 6.03(c) (West 2003). While Torres testified regarding her own fear while
restrained in her apartment with Cook, she did not testify to any specific circumstances surrounding
Cook's conduct or any result of Cook's conduct that exposed her to a substantial risk of serious
bodily injury. We decline to hold that the exhibition of a knife, even by a seemingly unstable
individual, is sufficient by itself to recklessly expose a victim to a substantial risk of serious
bodily injury. See Ransdell v. State, No. 06-06-00166-CR, 2007 Tex. App. LEXIS 3493, at *17-18
(Tex. App.--Texarkana May 8, 2007, no pet.) (mem. op., not designated for publication)
(holding that evidence was insufficient to uphold finding of substantial risk of serious bodily injury,
even though bipolar defendant barricaded his family inside house and armed himself with
small baseball bat).

 We sustain Cook's third issue on appeal and hold that the evidence is legally
insufficient to support a finding that Cook recklessly exposed Torres to a substantial risk of serious
bodily injury. In light of this holding, we need not reach Cook's factual-sufficiency challenge.

 We may reform a judgment to show a conviction for a lesser-included offense if
we determine that the evidence is insufficient to support a conviction for the greater offense. See
Watson v. State, 923 S.W.2d 829, 832 (Tex. App.--Austin 1996, pet. ref'd). Because Cook
successfully challenged only the finding that elevates his unlawful restraint conviction from a class
A misdemeanor to a third-degree felony, we modify the judgment to reflect a conviction for the class
A misdemeanor of unlawful restraint. See Tex. Penal Code Ann. § 20.02(c).


CONCLUSION

 We affirm the judgment of conviction for aggravated robbery in trial court
cause number D-1-DC-08-202690. We modify the judgment of conviction in cause number D-1-DC-08-202691 to reflect a conviction for unlawful restraint as a class A misdemeanor, rather than
a third-degree felony, and affirm the conviction as modified. In addition, we reverse that portion of
the judgment assessing punishment and remand for a new punishment hearing in cause number D-1-DC-08-202691.

 

 ___________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

Filed: October 9, 2009

Do Not Publish
1. Because of the large number of officers involved in the surveillance efforts, the defense
agreed to allow De Los Santos and other supervising officers involved to testify as to their own
observations and the observations reported by the officers they supervised, and to waive hearsay
objections as to their testimony regarding other officers' observations.
2. If the judgment contains an affirmative deadly-weapon finding under section 3g(a)(2) of
article 42.12, a prisoner is not eligible for parole until his actual calendar time served, without
consideration for good conduct time, equals one half of the sentence or thirty calendar years,
whichever is less. Tex. Gov't Code Ann. § 508.145(d) (West Supp. 2008); Tex. Code Crim. Proc.
Ann. art. 42.12, § 3g(a)(2) (West Supp. 2008). Without the deadly-weapon finding, a defendant is
parole-eligible after serving one-quarter of the time, with credit for good behavior. Tex. Gov't Code
Ann. § 508.145(f). Thus, a deadly-weapon finding also requires Cook to serve a substantially longer
period than would be required without the finding.
3. Cook concedes that the State proved these two elements.
4. After closing arguments, the trial court stated, "I'm not really worried about the knife in
the door. That is not a big deal to me." 
5. A short discussion was held on the record regarding whether police officers had ever
unfolded the knife after retrieving it from Cook, and the trial court stated, "Okay. Do we have
State's Exhibit 3 [the folding knife] here? Is this one of these things that I have to use my gloves
with or something like that that you-all always use and everything or not?" The State responded, "I
don't think so. I spared you the Taser so we wouldn't all have to get our gloves." The trial court
then began discussing McCain v. State, 882 S.W.3d 497 (Tex. Crim. App. 2000), a case cited by
defense counsel during closing argument, and no further mention was made of unfolding or handling
the folding knife.
6. Torres did not testify that Cook ever unfolded the knife in her presence, nor did she testify
regarding any perception she may have had of the size or sharpness of its blade. However, a victim
need not "be provided with a clear, unobstructed, and complete view of the weapon used in the
commission of a crime in order to establish the deadliness of the weapon." Billey v. State,
895 S.W.2d 417, 423 (Tex. App.--Amarillo 1995, pet. ref'd) (holding that evidence was sufficient
to establish hunting knife was deadly weapon where defendant displayed handle of knife to victim
during robbery).