Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



VICTOR GIL,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00108-CR


Appeal from the


210th District Court


of El Paso County, Texas


(TC# 20040D05695)


O P I N I O N



 This is an appeal from convictions on two counts of sexual assault, both enhanced by the
allegation of a prior felony conviction. The court assessed punishment at life imprisonment on each
count. (1) We modify and affirm.

I. SUMMARY OF THE EVIDENCE


 On July 30, 2004, the complainant left her two oldest children at her ex-mother-in-law's
house for the weekend. She returned to her apartment with her twin seven-week-old babies. After
feeding the babies, she spoke on the telephone with her ex-husband's girlfriend until about 1:50 a.m. 
She fed the babies again, and she fell asleep on the couch, next to the babies. At approximately 3:30
a.m., she awoke because she felt pressure on her left side. The complainant initially thought that it
was the twins' father, but she observed that the man next to her was wearing a diamond earring. She
asked the man, later identified as Appellant, what he wanted. Appellant responded that she should
not look at him and that she knew what he wanted. When the complainant tried to push Appellant
away, she felt something that she first thought was a screwdriver on her arm. Upon closer view, she
saw that the item was a knife. The knife was lying on her left hip. The complainant told Appellant
that she would do anything, as long as he did not hurt her or the babies.

 Appellant got on top of the complainant and began kissing her face, neck, and breasts. He
then took off her underwear and penetrated her sexual organ with his finger. This caused her pain. 
Appellant then got on his knees and kissed and used his tongue on her sexual organ. Appellant then
took his pants off and penetrated her sexual organ with his penis. Appellant commanded the
complainant to get up from the couch. He got behind her and told her to take her robe off and bend
over. He pushed her forward, but she "just bent to [her] knees."

 The complainant testified that Appellant had put the knife down on top of the pillows on the
couch. When she was bending her knees down, Appellant accused her of trying to grab the knife. 
He picked up the knife, held it against her right side, and then placed it on a table. He tried to
penetrate her from behind.

 When he could not succeed at that, he told the complainant to lie back down, so that he could
finish. He again penetrated her sexual organ with his penis. The complainant testified that
Appellant pinned her down to the sofa. His weight was too great for her to push him away.

 As this was occurring, the complainant reached for her phone and attempted to call 9-1-1
twice. Appellant asked her if she was going to tell anyone what had occurred, and she responded
that she would not do so, as nobody would believe her. Appellant then rose, put his pants on, and
put the knife in his pocket. As he walked towards the door, he told the complainant not to worry
about fingerprints, because he had taken care of them. He stated that he was going to have her under
surveillance for twenty-four hours, "just in case you call anybody." He then used his shirt to turn
the doorknob and left the apartment. The complainant called 9-1-1, and she locked the door. She
looked out the window, and she saw a white van leaving.

 The complainant was taken to the hospital, where she first realized that she had a "poke" or
"cut" on her hip. This was an injury that she did not have prior to the assault, and it was in the area
of her body where Appellant had held the knife during the assault. The complainant testified that
a bedroom window screen had been bent, cut, and turned upside down. In had not been in that
condition prior to the assault. She testified that she did not give Appellant consent to enter her
apartment or to sexually assault her, and she was afraid that, after Appellant finished the sexual
assault, he was going to hurt either her or the babies. Her thoughts about trying to take the knife
away were stymied by her fear for the safety of the babies.

 On cross-examination, the complainant acknowledged that she did not say anything about
the window screen to the police. She stated that this was due to the fact that she misunderstood that
more severe damage had occurred to the screen than the damaged condition it was in prior to the
assault. The complainant testified that throughout the attack, she did not scream, try to scratch her
attacker, try to grab the knife, or try to run for the door. She explained that she thought that such
actions would have made the situation worse and could have caused harm to the babies.

 Hector Rodriguez, Jr., testified that he lived in the apartment above the complainant's
apartment. On July 31, 2004, while he was coming home from a night out at a little before 4 a.m.,
he saw a man next to the door of the complainant's apartment. A white van was parked outside the
apartment. The man, whom Rodriguez identified as Appellant, was acting suspiciously, in that he
took "his sweet time," and he closed the complainant's apartment door very carefully, so as not to
make any noise. Rodriguez got to his apartment, and when he looked out the window five to ten
minutes later, the white van was gone. He stated that the van had a chrome ladder in the back.

 The attendant police investigation revealed no signs of forced entry. No fingerprints of
Appellant were found on the scene. The police recovered a knife from Appellant's kitchen, but the
complainant was not able to identify the knife. Also, a white van with a chrome ladder in the back
was found at Appellant's residence. The complainant told the police that Appellant was chewing
gum during the attack, and a piece of gum was found stuck to her leg at the hospital. However, no
DNA was detected on the gum. The State and Appellant stipulated that no DNA was discovered,
and that the result of the rape kit collected from the complainant at the hospital revealed that no
semen was detected.

 During the defense portion of the trial, Appellant called the sole defense witness, Isaias
Paredes, who testified that he was one of complainant's neighbors. He stated that the complainant
frequently had male and female guests at her apartment. The witness had seen a white van matching
the van found at Appellant's residence several weeks before the incident. He saw "some young
guys" who where carrying grocery bags from the van to the complainant's apartment. Paredes,
however, knew nothing of the events of July 30 and 31.

II. DISCUSSION


 In Issue No. One, Appellant asserts that the evidence was legally and factually insufficient
to support the jury's finding that a deadly weapon was used in the commission of the offense. In
reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light
most favorable to the judgment to determine whether any rational trier of fact could find the essential
elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Butler v. State, 769 S.W.2d 234, 239
(Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More
particularly, sufficiency of the evidence should be measured by the elements of the offense as
defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997). (2)

 Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. 
Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951 (1990); Dwyer
v. State, 836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). We do not resolve any conflict
in fact, weigh any evidence, or evaluate the credibility of any witnesses, and thus, the fact-finding
results of a criminal jury trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52
(Tex. App.--El Paso 1995, pet. ref'd); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref'd); Bennett v. State, 831 S.W.2d 20, 22 (Tex. App.--El
Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational, by viewing all the evidence admitted at trial in the light most
favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any
inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at 843 (quoting Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of fact, not the appellate court, is
free to accept or reject all or any portion of any witness's testimony. Belton v. State, 900 S.W.2d
886, 897 (Tex. App.--El Paso 1995, pet. ref'd).

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand or if the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder's determination or that the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the
testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Consequently, we
may find the evidence factually insufficient only where necessary to prevent a manifest injustice
from occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1977).

 A special issue was submitted to the jury regarding the use of a deadly weapon. The jury
answered the special issue affirmatively, and the court entered the affirmative finding on the
judgments for Counts II and III.

 The Penal Code defines two types of items that can qualify as a deadly weapon: First is a
firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury; the second category includes "anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury." See Tex. Penal Code Ann.
§ 1.07(a)(17)(A) and (B) (Vernon Supp. 2007). "Serious bodily injury" is defined as "bodily injury
that creates a substantial risk of death or that causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code
Ann. § 1.07(a)(46).

 Knives generally fall into the second category. McCain v. State, 22 S.W.3d 497, 502-03
(Tex. Crim. App. 2000). While not every type of knife is per se a deadly weapon, any knife can, by
virtue of its use, become a deadly weapon. See, e.g., id. Accordingly, in order for a knife to qualify
as a deadly weapon, the State is required to prove that the knife, in the manner of its use, was capable
of causing death or serious injury or that it was displayed in a manner conveying an express or
implied threat that serious bodily injury or death will result, if the aggressor is not satisfied or
complied with. Jones v. State, 843 S.W.2d 92, 96-97 (Tex. App.--Dallas 1992, pet. ref'd).

 Factors to consider in determining whether a knife is a deadly weapon include the dimensions
and sharpness of the knife, nature or existence of wounds, manner of its use, testimony of its
life-threatening capabilities, and the physical proximity of the accused and the victim. Thomas v.
State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Another factor is the existence of threats or
words used by the assailant. Williams v. State, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979). The
State is not required to offer the deadly weapon into evidence to meet its burden of proof. Victor v.
State, 874 S.W.2d 748, 751 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (citing Morales v.
State, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982)). It is also not necessary that the knife inflicted
wounds. Birl v. State, 763 S.W.2d 860, 863 (Tex. App.--Texarkana 1988, no pet.); see Brown v.
State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986).

 No single factor is determinative of the deadly-weapon issue. See Nash v. State, 175 S.W.3d
427, 430 (Tex. App.--Texarkana 2005, pet. ref'd). The most important factor in determining the
deadly weapon issue is the manner in which the weapon was used. Jones, 843 S.W.2d at 97.

 Appellant maintains that the evidence is insufficient to show that he used a deadly weapon
during the sexual assaults because: (1) Since no evidence was presented regarding the physical
characteristics of the knife, the State failed to prove that the knife, in the manner of its use or
intended use, was capable of causing death or serious bodily injury; and (2) Appellant did not
threaten the complainant with the knife, in that she was not placed in fear due to the use of the knife,
and the knife was not used to cause any actual bodily injury.

 The complainant testified that Appellant utilized a knife during the attack. The knife was
present during the entire attack. He held the knife against her at one point. Upon her realization that
Appellant had a knife, complainant stopped any aspect of resistence. It is clear that Appellant used
the knife to facilitate the commission of the offenses. See McCain, 22 S.W.3d at 502-03.

 Next, we must determine if the evidence was sufficient to support the jury's finding that the
knife was a deadly weapon. There was no testimony regarding the size or shape of the knife or its
deadliness. However, there was testimony that Appellant used the knife to threaten the complainant
with serious injury or death, in order to compel her to acquiesce to his demands. She testified that
she was placed in fear of her life (and that of her twin babies) and she submitted to Appellant's
demands because of the use of the knife.

 Furthermore, the complainant suffered an injury. While it was minor, the poke she received
showed some indication of the ability of the knife to penetrate skin. In McCain, the Court of
Criminal Appeals held that the defendant's mere carrying of a butcher's knife in his back pocket
during a violent attack was sufficient to demonstrate that the intended use of the knife was to show
that it was capable of causing death or serious bodily injury. The court therefore concluded that the
knife was a deadly weapon. McCain, 22 S.W.3d at 502-03. We likewise find that the evidence is
legally and factually sufficient to support the conviction. Issue No. One is overruled.

 In Issue No. Two, Appellant contends that the evidence is legally and factually insufficient
to support the jury's determination that Appellant penetrated the complainant's sexual organ with
his finger and with his sexual organ without the consent of the complainant. Specifically, Appellant
argues that no physical force or violence was used; accordingly, the State failed to prove lack of
consent.

 The Penal Code provides that a sexual assault is without the victim's consent if the actor
compels the other person to submit or to participate by use of physical force or violence. Tex.
Penal Code Ann. § 22.011(b)(1) (Vernon Supp. 2007). This was the sole form of compulsion
alleged in this case. In reviewing the sufficiency of the evidence with regard to the use of force and
violence to prove lack of consent in a sexual assault, the courts look, not to the amount of resistance
by the victim, but to the acts of compulsion of the actor. Wisdom v. State, 708 S.W.2d 840, 842-43
(Tex. Crim. App. 1986). The issue on appeal is whether sufficient evidence was presented to show
that the accused compelled the victim's submission by the use of physical force or violence. 
Gonzales v. State, 2 S.W.3d 411, 415 (Tex. App.--San Antonio 1999, no pet.). The State needs to
demonstrate only that force was used; there is no requirement that a certain amount of force be used. 
Id. Being pinned or immobilized is sufficient to indicate force or violence. See id. at 413-15
(testimony that victim was thrown on couch and assailant got on top of her and she was unable to
move him off due to his weight was legally and factually sufficient to demonstrate use of force).

 In the present case, the complainant testified that Appellant pinned her to the sofa and she
was unable to push him off. We find the evidence is legally and factually sufficient to support the
conviction. Issue No. Two is overruled.

 In Issue No. Three, Appellant contends that the court abused its discretion by charging the
jury with the lesser-included offense of sexual assault. At the close of evidence and outside the
presence of the jury, the trial court noted that while the parties had been referring to Counts II and
III of the indictment as alleging an aggravated sexual assault, those counts actually alleged a sexual
assault, with a separate paragraph alleging the use of a deadly weapon. (3) Accordingly, the court's
written charge instructed the jury that Appellant was charged in Counts II and III with sexual assault. 
The court defined sexual assault and aggravated sexual assault, but the application paragraphs
authorized the jury to convict only for the sexual assault offenses alleged in the body of the
indictment. Appellant stated that he had no objection to the charge and the verdict forms indicated
that the jury found Appellant guilty of two counts of sexual assault.

 Appellant elected to go to the court to assess punishment. The court found the felony
enhancement to be true. The court stated that the range for second-degree sexual assault was five
to ninety-nine years or life when the enhancement allegation was taken into account. The court
sentenced Appellant to life imprisonment on both counts. The judgment and sentence includes the
jury's affirmative finding of the use of a deadly weapon.

 Appellant contends that the court erred in sua sponte submitting the lesser-included offense
of sexual assault to the jury because he was charged with aggravated sexual assault and the
submission allowed the jury to convict without reaching a unanimous decision on the deadly weapon
element of aggravated sexual assault. The State maintains that the court did not submit a lesser-included offense, because the actual charge was sexual assault, not aggravated sexual assault. We
agree.

 In the indictment, the captions indicate that the offenses in both Counts II and III are
aggravated sexual assault. However, the body of Counts II and III allege that Appellant intentionally
and knowingly engaged in various instances of sexual assault without the consent of the complainant
by the use of physical force and violence. This only alleges sexual assault. Compare Tex. Penal
Code Ann. § 22.011(a), which defines sexual assault, with Tex. Penal Code Ann. § 22.021(a),
which defines aggravated sexual assault.

 Where a variance exists between the offense indicated in the caption of the indictment and
the offense alleged in the body of the indictment, the language in the body of the indictment controls. 
See Jackson v. State, 880 S.W.2d 432, 433-34 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). 
The caption of the indictment is not part of the indictment and consists of mere surplusage. See id. 
In this instance, the deadly weapon special issue was not an element of the offense; therefore, there
is no issue of the jury's not having returned a unanimous verdict. We find that the court did not
submit a lesser-included offense. (4) Issue No. Three is overruled.

 In Issue No. Four, Appellant argues that he received ineffective assistance of counsel. 
Successful claims of ineffective assistance of counsel must first demonstrate that counsel was not
functioning as counsel, guaranteed by the Sixth Amendment, in providing reasonably effective
assistance. Strickland v. Washington, 466 U.S. 668 (1984). The second prong of this test requires
a showing that counsel's errors were so serious as to deprive Appellant of a fair trial, such that there
arises a reasonable probability that, but for counsel's unprofessional errors, the results would have
been different. Reasonable probability is a likelihood sufficient to undermine confidence in the
outcome. Id. at 694. Texas adopted this test in Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim.
App. 1986); see also McFarland v. State, 845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992), cert.
denied, 508 U.S. 963 (1993).

 The constitutional right to counsel does not mean errorless representation. In order to meet
the constitutional standard, counsel must provide reasonably effective assistance. Wilkerson, 726
S.W.2d at 548. In reviewing these assertions, the totality of representation is examined, as opposed
to focusing upon isolated acts or omissions. Ineffective assistance of counsel cannot be established
by isolating or separating out one portion of the trial counsel's performance for examination. Bridge
v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this Court, on review, will
not engage in hindsighted comparisons of how other counsel, in particular, appellate counsel, might
have tried the case. See Wilkerson, 726 S.W.2d at 548. A fair assessment of trial counsel's
performance requires that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the
time. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). We must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonably professional assistance. 
The Appellant must overcome the presumption that, under the circumstances at trial, the challenged
action could be considered sound trial strategy. Strickland, 466 U.S. at 688-89; Stafford, 813 S.W.2d
at 506. Consequently, allegations of ineffectiveness of counsel must be firmly founded by the
record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983); Mercado v. State, 615 S.W.2d
225, 228 (Tex. Crim. App. 1981). The burden is on Appellant to establish ineffective assistance of
counsel by a preponderance of the evidence. Williams v. State, 837 S.W.2d 759, 761 (Tex. App.--El
Paso 1992, no pet.).

 Initially, we note that Appellant did not file a motion for new trial, and no hearing was held
regarding his ineffectiveness claim. In most instances, the record on direct appeal is undeveloped
and cannot adequately reflect any failings of trial counsel. Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999). A defendant may rebut the presumption of effectiveness by providing a
record from which the appellate court can ascertain that trial counsel's performance was not based
on sound trial strategy. Parmer v. State, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref'd). 
A defendant may provide that record by filing a motion for new trial and obtaining a hearing thereon,
based on ineffective assistance of counsel. Id. Any error in trial strategy will be deemed inadequate
representation only if counsel's actions are without any plausible basis. Id. A record that does not
include any discernible explanation of the motivation behind trial counsel's actions fails to establish
whether his actions were of strategic design or were the result of negligent conduct. Thompson, 9
S.W.3d at 814. As there is no record before us, we find that, at this stage of the proceedings,
Appellant has failed to demonstrate ineffective assistance of counsel. Issue No. Four is overruled. 
 We affirm, as modified, the judgment of the trial court.


 KENNETH R. CARR, Justice

March 29, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. The jury was instructed to consider one count of burglary of a habitation, and three counts of sexual assault. 
The jury returned a not guilty verdict on the burglary of a habitation count, and it returned two guilty verdicts on the
second and third counts, both charging sexual assault. The jury found Appellant not guilty on the fourth count, which
was the remaining sexual assault count. The jury answered "yes" to the special issue, which inquired whether a deadly
weapon was used in the commission of offenses for which Appellant was found guilty.
2. The application paragraphs for Counts II and III in the court's charge to the jury read:


AS TO COUNT II - SEXUAL ASSAULT



 Now, if you find from the evidence beyond a reasonable doubt that on or about the 31st day
of July, 2004, in El Paso, County, Texas, the defendant, VICTOR GIL, did then and there intentionally
or knowingly cause the penetration of the female sexual organ of MARIA LUISA HIDALGO, by
means of the sexual organ of VICTOR GIL without the consent of MARIA LUISA HIDALGO, by
the use of physical force or violence;


 OR


 If you find from the evidence beyond a reasonable doubt that on or about the 31st day of July,
2004, in El Paso, County, Texas, the defendant, VICTOR GIL, did then and there intentionally or
knowingly cause the sexual organ of MARIA LUISA HIDALGO, to contact the sexual organ of
VICTOR GIL without the consent of MARIA LUISA HIDALGO, by the use of physical force or
violence then you will find the defendant guilty as charged in COUNT II of the indictment. (Verdict
Form D). 


 If you do not believe, or if you have a reasonable doubt thereof, you will find the defendant
not guilty of COUNT II (Verdict Form C). You shall next consider whether he is guilty or not guilty
of Count III, of the indictment.


. . .


AS TO COUNT III - SEXUAL ASSAULT



 Now, if you find from the evidence beyond a reasonable doubt that on or about the 31st day
of July, 2004, in El Paso, County, Texas, the defendant, VICTOR GIL, did then and there intentionally
or knowingly cause the penetration of the female sexual organ of MARIA LUISA HIDALGO, by
means of the finger of VICTOR GIL without the consent of MARIA LUISA HIDALGO, by the use
of physical force or violence then you will find the defendant guilty as charged in COUNT III, of the
indictment. (Verdict Form F).


 If you do not believe, or if you have a reasonable doubt thereof, you will find the defendant
not guilty of COUNT III, (Verdict Form E), and next consider whether he is guilty or not guilty of
the offense [of] COUNT IV, of the indictment. 


(All emphases in original).
3. Counts II and III of the indictment read:


 STATE OF TEXAS VS. VICTOR GIL

 RE-INDICTMENT - AGGRAVATED SEXUAL ASSAULT

 COUNT II


 And the Grand Jurors of aforesaid, upon their oaths aforesaid, do further say, charge and
present in and to said Court at said term that on or about the 31st day of July, 2004 and anterior to the
presentment of this indictment, in the County of El Paso and State of Texas, VICTOR GIL,
hereinafter referred to as Defendant,


 PARAGRAPH A

 did then and there intentionally and knowingly cause the penetration of the female sexual organ of
MARIA LUISA HIDALGO by means of the sexual organ of VICTOR GIL without the consent
of MARIA LUISA HIDALGO, by the use of physical force and violence, 


 And it is further presented that said Defendant did use and exhibit a deadly weapon, to-wit: 
a knife, that in the manner of its use and intended use was capable of causing death and serious bodily
injury, during the commission of and immediate flight from said felony offense,


 PARAGRAPH B

 did then and there, intentionally and knowingly cause the sexual organ of MARIA LUISA
HIDALGO to contact the sexual organ of VICTOR GIL without the consent of MARIA LUISA
HIDALGO, by the use of physical force and violence, 


 And it is further presented that said Defendant did use and exhibit a deadly weapon, to-wit:
a knife, that in the manner of its use and intended use was capable of causing death and serious bodily
injury, during the commission of and immediate flight from said felony offense . . . .


 

 STATE OF TEXAS VS. VICTOR GIL

 RE-INDICTMENT - AGGRAVATED SEXUAL ASSAULT

 COUNT III


 And the Grand Jurors of aforesaid, upon their oaths aforesaid, do further say, charge and
present in and to said Court at said term that on or about the 31st day of July, 2004 and anterior to the
presentment of this indictment, in the County of El Paso and State of Texas, VICTOR GIL, hereinafter
referred to as Defendant,


 did then and there intentionally and knowingly cause the penetration of the female sexual organ of
MARIA LUISA HIDALGO by means of the finger of VICTOR GIL without the consent of
MARIA LUISA HIDALGO, by the use of physical force and violence,


 And it is further presented that said Defendant did use and exhibit a deadly weapon, to-wit:
a knife, that in the manner of its use and intended use was capable of causing death and serious bodily
injury, during the commission of and immediate flight from said felony offense . . . .


(All emphases in original).
4. We note that the judgments and sentences inaccurately indicate that Appellant was convicted of aggravated
sexual assault in Counts II and III. However, as indicated, Appellant was convicted of two counts of sexual assault with
enhancement allegations. This Court has the authority to modify an incorrect judgment when it has the information and
evidence necessary to do so. Tex. R. App. P. 43.2(b); Norman v. State, 642 S.W.2d 251, 253 (Tex. App.--Houston [14th
Dist.] 1982, no pet.). Because we have the necessary information, we modify the trial court's judgments and sentences
to indicate that Appellant was convicted of two counts of sexual assault.