**Opinion filed February 9, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00097-CR

_____

## TELVIN JASMOND GREEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-20-0510-CR**

## M E M O R A N D U M   O P I N I O N

The jury found Telvin Jasmond Green, Appellant, guilty of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03 (West 2019). The jury also found that the two prior convictions alleged by the State for enhancement purposes were true. The jury assessed Appellant's punishment at confinement for a term of thirty years in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine. In four issues, Appellant

challenges his conviction and requests a new trial or, in the alternative, a new punishment hearing. We modify and affirm.

*Background Facts*

On March 28, 2020, Monica Munoz was working the evening shift as an assistant manager at a Dollar General store in Odessa. At approximately 6:00 or 7:00 p.m., Appellant and a woman entered the store. Munoz testified that she noticed Appellant and the woman "acting weird" and that she was keeping a close eye on the pair because, based on their behavior, she was worried that they were going to steal merchandise. Munoz said that she turned her back on the pair and they proceeded to run out of the store with a shopping cart containing merchandise they had not paid for.

Munoz ran outside following Appellant and the woman and saw Appellant begin loading the merchandise into a maroon van. Munoz stayed on the sidewalk by the corner of the store and asked Appellant to return the items to the store. Munoz said that she became "hot-tempered" and "aggressive" when Appellant did not heed her request to return the items. Munoz testified that Appellant stopped loading merchandise into the van and lifted the left side of his shirt to show Munoz what appeared to be a chrome firearm with "red diamonds" and a black barrel.

Munoz testified that Appellant began exiting the parking lot, but he stopped the van when he noticed that Munoz was repeatedly shouting the van's license plate numbers. Munoz said Appellant then jumped out of the van and "asked [her] if [she] wanted some, to come and get some" while pointing his index finger and thumb "to mimic a firearm." Munoz testified that Appellant's body language made her "scared for [her] life." Appellant then got back into the van and exited the parking lot. Munoz ran inside the store and called 9-1-1.

2

The 9-1-1 call that Munoz made was admitted into evidence and played for the jury. In the recording, Munoz stated that somebody "pulled a gun" on her. At trial, Munoz testified that she did not remember an actual firearm ever being pointed at her.

Two customers that were present at the store at the time of the incident also testified. Angela Santiago testified that, as her husband was parking their vehicle, she saw Appellant and a woman run out of the store "with a cart full of stuff that was obviously not bagged." Santiago said that she saw the store manager following behind Appellant and the woman, telling the pair, "Just give me my stuff."

Santiago said Appellant entered the vehicle, backed out of a parking spot, got out of the vehicle, got back into the vehicle, and left the parking lot. Santiago testified that this behavior was strange but that she did not see Appellant holding a weapon and did not see him raise his shirt. Santiago said that Appellant was "very confrontational, like [he] was going to fight the manager."

Mauricio Vela-Melendez testified that he was in his parked vehicle outside the store while his wife was inside shopping. Vela-Melendez said that he saw a couple run out of the store and put merchandise into their vehicle. Vela-Melendez testified that he began taking a video on his cell phone after he saw an employee of the store run after the couple, because he thought a fight was about to occur. The video Vela-Melendez took was admitted into evidence and played for the jury. When asked if he saw any "behavior from [Appellant] involving a weapon," Vela-Melendez testified that he saw Appellant lift his shirt. Vela-Melendez said that he did not see a knife on Appellant.

Officer James Grissom with the Ector County Sheriff's Office was dispatched to the Dollar General. Based on his investigation, Officer Grissom determined that an aggravated robbery had occurred. Officer Grissom stated that he ran the van's

license plates provided to him and then went to the address where the van was registered. Officer Grissom testified that when Appellant came to the door of the mobile home located at the address, Officer Grissom saw a knife on Appellant's waistband that "matched the description of what [was] described to have been a gun at the store." Officer Grissom testified that the knife recovered from Appellant was chrome in color and had a belt clip. The knife recovered from Appellant was admitted into evidence.

Officer Grissom testified that he read Appellant his *Miranda*[1] warnings after the stolen merchandise was recovered. Appellant waived his rights and was interrogated outside his home. Officer Grissom testified that Appellant admitted to stealing the items and said that his girlfriend was not involved. Officer Grissom's body camera footage of Appellant's arrest was subsequently admitted into evidence and played for the jury.

Sergeant Paul DeLeon with the Ector County Sheriff's Office was also on scene when Appellant was arrested. Sergeant DeLeon's body camera footage was also admitted and played for the jury. In the video, Appellant can be heard saying "my knife goes with me everywhere." Sergeant DeLeon testified that, when Appellant said that he did not "pull a weapon" at the Dollar General, Sergeant DeLeon had not yet asked Appellant if he had used a weapon.

Amanda Farmer, the woman with Appellant at the Dollar General, testified in Appellant's defense. Farmer testified that Appellant drove the pair to the Dollar General. Farmer said that she exited the store before Appellant did and that she saw Appellant quickly leave the Dollar General with a man and a woman running after him. Farmer said the woman was calling Appellant a racial slur and yelling at him to "give the stuff back." Farmer said that Appellant was yelling back. Farmer

---

[1]*Miranda v. Arizona*, 384 U.S.436 (1966).

4

testified that she did not see a firearm or knife on Appellant, nor did she see Appellant point his hand "like a gun" at the woman. Farmer testified that Appellant stopped the van after he began exiting the parking lot and stepped out of the van to yell at the woman, but he did not threaten her. Farmer said that she knew Appellant frequently carried knives in his waistband area, but she did not see a knife on Appellant that day until after they returned home.

Appellant elected to have the jury determine both guilt and punishment. Appellant made no objections to the guilt/innocence jury charge. Appellant's only objections to the jury charge on punishment were that the two enhancement paragraphs constituted cruel and unusual punishment and violated Appellant's due process rights because of their "overbroad" application. Both objections were overruled. Appellant also filed a motion for an instructed verdict and a motion for new trial, both of which were denied by the trial court.

*Analysis*

*Sufficiency of the Evidence*

In his second issue, Appellant asserts that the evidence produced at trial was insufficient to support a finding (1) that he used or exhibited a deadly weapon with the intent to cause death or serious bodily injury or (2) that he was in possession of a deadly weapon capable of causing serious bodily injury. As a result, Appellant contends that the evidence at trial was insufficient to support a conviction for aggravated robbery.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

A person commits the second-degree felony offense of robbery if, in the course of committing a theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. PENAL § 29.02(a)(2), (b). "In the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). If a person commits robbery and uses or exhibits a deadly weapon, then the offense is elevated to a first-degree aggravated robbery. *Id.* § 29.03(a)(2), (b); *see Boston v. State*, 410 S.W.3d 321, 322 n.1 (Tex. Crim. App. 2013).

The original indictment charged Appellant with aggravated robbery, alleging that, while in the course of committing theft of property and with the intent to obtain or maintain control of the property, he intentionally and knowingly threatened or placed Monica Munoz in fear of imminent bodily injury or death, and used a deadly weapon, to-wit: a firearm, to do so. The indictment was subsequently amended to include a second paragraph that alleged, in the alternative, that the deadly weapon that Appellant used was a knife. Therefore, whether the evidence was sufficient to convict Appellant of first-degree aggravated robbery hinges on whether the jury could have rationally concluded that Appellant used or exhibited a firearm or a knife as a deadly weapon during the robbery. *See Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (citing PENAL § 29.03(a)(2)).

Appellant admitted to stealing merchandise from the Dollar General. Munoz and Vela-Melendez testified that Appellant lifted his shirt while loading stolen merchandise into the van. Munoz testified that she thought Appellant was exhibiting a firearm when he lifted his shirt. Munoz also testified that Appellant later jumped out of the van in an aggressive manner and asked her "if [she] wanted some, to come and get some," which she interpreted to be a threat of violence.

7

When Appellant was arrested at his home, arresting officers immediately noticed a chrome knife on Appellant's waistband. Officer Grissom testified that he believed the knife recovered could have been what Munoz had described as a firearm. During Appellant's interrogation on the steps of his home, Appellant told officers that "[his] knife goes with [him] everywhere." Farmer testified that she knew Appellant often carried knives on his person in his waistband area. In light of the foregoing, a reasonable jury could have determined that Appellant had a knife on his person that he exhibited while committing theft from the Dollar General.

Because we have determined that there is sufficient evidence for a rational jury to conclude that Appellant exhibited a knife during the course of a robbery, we next turn to whether evidence was sufficient to establish that the knife exhibited by Appellant could be classified as a deadly weapon. A "[d]eadly weapon" is "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17) (West 2021). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "A knife is not a deadly weapon, per se." *Blain v. State*, 647 S.W.2d 293 (Tex. Crim. App. 1983). Accordingly, we focus our analysis on the second element of the definition. Appellant asserts that the evidence is insufficient to prove that the knife was capable of causing death or serious bodily injury in the manner he used it.

In determining whether a weapon is deadly in its manner of use or intended manner of use, the defendant need not have actually inflicted harm on the victim. *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017). Instead, we consider words and other threatening actions by the defendant, including the defendant's

8

proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon. *Id.* We note that the court in *Johnson* determined that a butter knife that was brandished during a robbery constituted a deadly weapon. *Id.* at 321.

Texas courts have consistently held that a defendant threatening a victim with a knife can be sufficient to show that the knife could be considered a deadly weapon under the facts of the case. *See Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1985) (op. on reh'g) (holding that the appellant's "actions were perceived by [victim] as an implied threat, and the finder of fact could properly find likewise"); *Jones v. State*, 843 S.W.2d 92, 96–97 (Tex. App.—Dallas 1992, pet. ref'd) (holding that the appellant displaying a knife "in a manner conveying an express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied" is sufficient to show that the knife used was a deadly weapon); *see also Huerta v. State*, No. 03-21-00041-CR, 2022 WL 17824500, at *4 (Tex. App.—Austin Dec. 21, 2022, no pet. h.) (mem. op., not designated for publication) ("Objects used to threaten deadly force are in fact deadly weapons, even if the actor has no intention of actually using deadly force. The weapon need only . . . be displayed in a manner conveying an express or *implied* threat that serious bodily injury or death will result if the aggressor is not satisfied." (citations and internal quotation marks omitted)).

Here, there was testimony at trial that Appellant was yelling and acting "aggressively." Both Santiago and Vela-Melendez testified that they thought an altercation might take place between Appellant and Munoz. Munoz testified that Appellant told her that "if [she] wanted some, to come and get some" while holding his hand to mimic a firearm and pointing it towards Munoz. When asked if he saw

9

"any behavior from the defendant involving a weapon," Vela-Melendez testified that Appellant lifted his shirt.

Additionally, the knife found on Appellant was admitted into evidence. Officer Grissom approached the jury box to demonstrate how the knife worked. Officer Grissom testified that the knife was "just a regular pocketknife," chrome in color, and that the knife had a belt clip attached to it. Thus, the jury could independently evaluate the knife's characteristics and capacity for causing death or serious bodily injury. *See Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) ("One appropriate method of showing the physical characteristics of a weapon is to introduce the weapon itself into evidence.").

Munoz testified that she perceived Appellant as being annoyed with her for following him out of the store. According to Munoz, Appellant showed her what she thought was a firearm in his waistband area in response to her shouting the van's license plate number and asking Appellant to return the stolen merchandise. Munoz testified that, while she originally thought Appellant displayed what she thought was a firearm to merely scare her, Appellant jumping out of the van to confront her a second time made her fear for her life. Munoz said that she became worried Appellant was going to return to the store later that night. A reasonable person standing in Munoz's shoes would consider that Appellant had threatened her with the knife by exhibiting it to her while also verbally threatening her. *See Johnson*, 509 S.W.3d at 324 n.5. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there is sufficient evidence from which a rational juror could find that the knife was a deadly weapon in the manner that Appellant used it or intended to use it. We overrule Appellant's second issue.

10

*Alleged Jury Charge Errors*

In Appellant's remaining three issues, he asserts that the trial court's jury charges, both for guilt/innocence and punishment, contained three errors. Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." TEX. CODE. CRIM. PROC. ANN. art. 36.14 (West 2007); *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

In his first issue, Appellant contends that the trial court committed reversible error by charging the jury with a definition of "intentionally" that failed to include language regarding the nature of Appellant's conduct, and a definition of "knowingly" that failed to include language regarding the nature of Appellant's conduct and the circumstances surrounding Appellant's conduct. The relevant portion of the jury charge defined "intentionally" and "knowingly" as follows:

> You are instructed that a person acts **"intentionally"**, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

> You are instructed that a person acts **"knowingly"**, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

11

There are three conduct elements that may be involved in an offense: the nature of the conduct, the result of the conduct, and the circumstances surrounding the conduct. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more of these conduct elements that alone or in combination form the overall behavior that the legislature has intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs when it fails to tailor the definitions of the culpable mental states to the conduct element or elements of the offense to which they apply. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

In order to obtain a conviction for aggravated robbery, the State was required to prove that, in the course of committing theft, Appellant intentionally or knowingly threatened or placed Munoz in fear of imminent bodily injury or death, and that he used or exhibited a deadly weapon. *See* PENAL § 29.03. To establish that Appellant committed "theft," the State was required to prove that he unlawfully appropriated property with the intent to deprive the owner of the property. *See* PENAL § 31.03(a). The phrase "unlawfully appropriates" in the statutory definition of theft refers to the nature of the conduct. *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.); *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). Threatening another also refers to the nature of the conduct, while placing another in fear of imminent bodily injury or death refers to the result of the conduct. *Servin*, 582 S.W.3d at 632; *see Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014). Finally, the phrase "in the course of committing theft" refers to the circumstances surrounding the conduct. PENAL § 29.02(a); *Servin*, 582 S.W.3d at 632; *Ash*, 930 S.W.2d at 195. Accordingly, Appellant is correct in asserting that the

12

offense of aggravated robbery at issue in this case contained all three conduct elements. *See Servin*, 582 S.W.3d at 632; *Gutierrez v. State*, 446 S.W.3d 36, 41 (Tex. App.—Waco 2014, pet. ref'd).

A trial court errs when it includes incomplete abstract definitions in its charge to the jury with respect to the applicable mental states and the corresponding conduct elements for the charged offense. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). Because Appellant did not object to the guilt/innocence jury charge, reversal is required only if any of the three alleged errors result in egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171. In *Almanza*, the Texas Court of Criminal Appeals outlined four factors that a reviewing court should consider when determining whether a jury charge error resulted in egregious harm: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Villarreal*, 453 S.W.3d at 433.

We first analyze the erroneous instruction in relation to the jury charge as a whole. *Id.*; *Almanza*, 686 S.W.2d at 171. "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious."). Here, the application paragraph stated:

> Now if you find from the evidence beyond a reasonable doubt that on or about March 28, 2020, in Ector County, Texas, the Defendant, TELVIN JASMOND GREEN, while in the course of committing theft of property and with intent to obtain or maintain control of the property, did then and there intentionally or knowingly threaten Monica Munoz with imminent bodily injury or death, or place Monica Munoz in fear of imminent bodily injury or death, and did then and there use or exhibit a deadly weapon, to wit: a firearm or knife, that in the manner of its intended use was capable of causing death or serious bodily injury, then you will find the Defendant, TELVIN JASMOND GREEN, Guilty of AGGRAVATED ROBBERY as charged in the Amended Indictment.

The language of the application paragraph before us mirrors the language of the application paragraph at issue in *Wright v. State*, which the Fort Worth Court of Appeals found correctly applied "the intentionally and knowingly mens rea . . . to the threaten or place-in-fear elements" of the offense. *Wright v. State*, No. 02-15-00399-CR, 2016 WL 6520189, at *4 & n. 5 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (addressing PENAL § 29.02(a) (2)). Similarly, the application paragraph of the charge before us sufficiently tracked the language of the statute and the indictment and correctly applied the intentionally and knowingly mens rea elements.

14

*See id.* Thus, the correct application paragraph weighs against a finding of egregious harm. *See Medina*, 7 S.W.3d at 640.

Second, we examine the state of the evidence. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Appellant's main defensive strategy at trial was to impeach the credibility of Munoz. The only witness who testified on behalf of Appellant was Farmer, who testified that Munoz called Appellant a racial slur numerous times and that Appellant did not verbally threaten Munoz or threaten her with a weapon. During the cross-examinations of Munoz, Santiago, and Vela-Melendez, Appellant's trial counsel focused on Munoz's demeanor and actions and whether the witnesses saw Appellant use or exhibit a weapon. As such, Appellant's trial strategy did not focus on a discussion of whether Appellant had the requisite knowledge or intent to threaten Munoz or place her in fear of imminent bodily injury or death. To the contrary, Appellant frequently asserted that Munoz's demeanor was calm and that Appellant did not have a weapon to threaten or frighten Munoz in the first place. As such, the state of the evidence weighs against a finding of egregious harm.

Third, we consider the arguments of counsel. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Again, Appellant's trial counsel focused his closing argument on Munoz's credibility, arguing to the jury that Munoz was "getting [Appellant] back" and that Munoz "can't even tell you the same story." Further, the State did not discuss Appellant's intent or knowledge during its closing argument. Therefore, because the matter of Appellant's intent or knowledge was not a focus of counsels' closing arguments, the third factor weighs against a finding of egregious harm.

Fourth, we consider any other relevant information contained in the record. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Appellant argues that

these incomplete definitions resulted in egregious harm to Appellant because "the jury may have reached a different verdict; the jury may not have been misled; and the jury may not have been confused on mandatory statutory mental states." However, there is nothing in the record to indicate that the jury was confused by the erroneous definitions of "intentionally" and "knowingly." The jury did not ask the trial court any questions during the guilt/innocence phase of trial, and it returned a verdict of guilty for the offense of aggravated robbery in less than fifteen minutes. As such, the record does not demonstrate that the erroneous definitions impacted the jury's ability to determine whether Appellant had the requisite intent or knowledge to threaten or place Munoz in fear of imminent bodily injury or death.

Because none of the four *Almanza* factors demonstrate that Appellant's defensive theories were affected by the erroneous definitions of "intentionally" and "knowingly" contained in the jury charge, Appellant's first issue is overruled.

In his third issue, Appellant contends that the trial court committed reversible error when it failed to include theft as a lesser included offense in the guilt/innocence jury charge. Appellant contends that the evidence presented at trial only supported a jury finding for theft and that Appellant was egregiously harmed when he was found guilty of a first-degree felony rather than a misdemeanor offense.

Appellant's trial counsel did not object to the guilt/innocence jury charge, nor did he request that theft be included as a lesser included offense. Generally, the failure to either object to the omission of or request a charge on a lesser included offense waives any error on appeal. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). Although the trial court has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged, it does not have a similar sua sponte duty to instruct the jury on all potential defensive issues, lesser included offenses, or evidentiary issues.

*Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).  A lesser included offense is not "applicable to the case" absent a request by the defense that the trial court charge the jury on the lesser included offense.  *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010).  Such issues frequently depend upon trial strategy and tactics and are generally left to the defendant and his trial counsel.  *Delgado*, 235 S.W.3d at 249.  Because the trial court did not err when it did not sua sponte charge the jury on the lesser included offense of theft, we do not reach any of the harm issues discussed in the briefing.  Appellant's third issue is overruled.

In his fourth issue, Appellant contends that the trial court committed reversible error in the jury charge on punishment by charging the jury with the incorrect version of the applicable parole instruction.  *See* TEX. CODE CRIM. PROC. ANN. art 37.07, § 4 (West Supp. 2022).  The relevant portion of the jury charge stated as follows: "Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or fifteen (15) years, whichever is less." *See id.* § 4(b).  However, the instruction set out in Article 37.07, section 4(a) is the correct parole instruction applicable to this case.  *See id.* § 4(a).[2]  The State concedes that the trial court's parole instruction was erroneous, but it asserts that Appellant did not suffer egregious harm from it.

The relevant portion of the correct parole instruction, which should have been included in the jury charge, provides as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less.  If the defendant is

---

[2]Appellant bases his fourth issue on Section 508.145(d) of the Texas Government Code.  TEX. GOV'T CODE ANN. § 508.145 (West Supp. 2022).  Article 37.07, section 4(a) comports with Section 508.145(d)(2).

17

> sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole.

*Id.*; *see* GOV'T § 508.145(d)(2). Thus, the trial court's parole instruction was erroneous in two respects: (1) it erroneously informed the jury that Appellant would receive credit for good conduct time towards parole; and (2) it erroneously informed the jury that Appellant would be eligible for parole by only serving one-fourth of his sentence (or fifteen years) when in fact he will not be eligible for parole until he has served one-half of his sentence (or thirty years). *See* CRIM. PROC. art. 37.07, § 4(a).

Because Appellant did not object to the erroneous parole instruction, we must determine whether Appellant suffered egregious harm. *See Almanza*, 686 S.W.2d at 171. Appellant asserts that "[t]he jury charge led the jury to believe that [Appellant] could be out of prison in as little as forty-five months, when, in reality, [Appellant] will not be eligible for parole for a minimum of [fifteen] years [based upon his assessed sentence of thirty years]." Appellant argues that this "significant difference" between the jury charge's erroneous instruction and the mandates of subsection (d)(2) "shocks the conscience."

We first analyze the erroneous instruction in relation to the jury charge as a whole. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Here, the erroneous instruction was followed by a mitigating instruction stating:

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this Defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

We presume that the jury followed the instructions that the trial court gave it in the charge. *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). The "curative" instruction given by the trial court would not cure the error in the parole instruction, but it would prevent harm to Appellant in that it would caution the jury that it could not consider parole and good conduct time in their assessment of punishment. *Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref'd). As such, the first factor does not weigh in favor of a finding of egregious harm.

Second, we examine the state of the evidence. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. During the punishment proceedings, the State sought to enhance Appellant's punishment range, to that of a habitual offender, with its reliance on two prior felony convictions. The State's evidence during the punishment proceedings included proving Appellant's five prior convictions via a latent fingerprint examiner's testimony regarding the similarity of Appellant's prints to the prints contained in the prior convictions. Those five prior convictions included the offense of engaging in organized criminal activity, unlawful possession of a firearm by a felon, failure to identify, possession of a controlled substance, and theft. Appellant did not present any evidence during the punishment proceeding. Thus, no evidence was presented regarding the possibility of parole. This factor does not support a finding of egregious harm.

Third, we consider the arguments of counsel. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Neither the State nor Appellant mentioned parole during the closing arguments on punishment. Therefore, counsel's arguments do not support a finding of egregious harm.

Fourth, we consider any other relevant information contained in the record. *Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. The only note the jury sent during punishment deliberations asked for State's Exhibit Nos. 11–16

19

(Appellant's fingerprints and the judgments from his previous convictions) to be given to the jury. The absence of a note indicating juror confusion regarding the parole instruction weighs against a finding of egregious harm. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (finding persuasive the absence of a note from the jury "expressing confusion regarding the instruction at issue").

Finally, we consider the sentence assessed by the jury. Because the jury found that the two prior felony convictions alleged for enhancement purposes were "true," the minimum sentence of confinement was twenty-five years, with a maximum sentence of life or ninety-nine years. *See* PENAL §§ 12.42(d), 29.03(b). The jury's assessed punishment of thirty years is near the low end of the applicable punishment range. Thus, the record does not support a determination that Appellant suffered egregious harm from the erroneous parole instruction, particularly when one considers Appellant's brazen conduct when confronted by the store manager. Because none of the four *Almanza* factors support a finding of egregious harm, we conclude that Appellant did not suffer egregious harm based on the erroneous parole instruction. We overrule Appellant's fourth issue.

*Modification of Judgment to Delete Unauthorized Fine*

The Texas Rules of Appellate Procedure provide this court with authority to modify a judgment when necessary. *See* TEX. R. APP. P. 43.2(b). Although not raised as an issue on appeal, the trial court's judgment contains an unauthorized fine. Appellant's punishment was enhanced to habitual status pursuant to Section 12.42(d) of the Texas Penal Code. Section 12.42(d) does not contain any provision that authorizes a fine to be imposed. PENAL § 12.42(d); *Dolph v. State*, 440 S.W.3d 898, 908 (Tex. App.—Texarkana 2013, pet. ref'd); *Blevins v. State*, 74 S.W.3d 125, 132 (Tex. App.—Fort Worth 2002, pet. ref'd); *see Taylor v. State*,

20

No. 11-12-00317-CR, 2014 WL 6806849, at *8 (Tex. App.—Eastland Nov. 26, 2014, pet. ref'd) (mem. op., not designated for publication).

When an unauthorized fine has been imposed, an appellate court may reform the judgment to delete the fine. *See Ex parte Youngblood*, 698 S.W.2d 671, 672 (Tex. Crim. App. 1985). Here, an unauthorized fine of $5,000 was assessed against Appellant. Because that fine was not authorized under Section 12.42(d), we modify the judgment of the trial court to delete the $5,000 fine.

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE

February 9, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.